Kate McHugh, as Administratrix of the Estate of Frank McHugh, Deceased, Appellant, *v.* The Manhattan Railway Company, Respondent.

1. Master and Servant — Death of Car Coupler — Question of Fact. The time when and the manner in which an accident happened to a railroad employee, whose death occurred through the alleged negligence of defendant in starting a train, is a question for the jury, where there is evidence that when last seen he was between a car and engine about to make a coupling; that he had a very brief time to make it; that no one saw him come out; that the coupling was made, and that his body was found at about the place it was made.

2. Employers' Liability Act — When Starting a Train an Act of Superintendence, Not a Mere Detail of the Work. Assuming that the train was started while the deceased was engaged in the coupling, or while he was attempting to withdraw to a place of safety, by one who, in the absence of the regular train dispatcher, had for three years been accustomed to take his place and perform such duty, his act cannot be regarded under the Employers' Liability Act (L. 1902, ch. 600, § 1) as a mere detail of the work, for which the defendant cannot be held responsible, but rather as an act of superintendence, for which, if negligently performed, it would be liable.

*McHugh* v. *Manhattan Ry. Co.*, 88 App. Div 554, reversed.

(Argued October 14, 1904; decided November 15, 1904.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 8, 1904, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Herbert C. Smyth* and *Millard F. Tompkins* for appellant. There was sufficient evidence to enable the jury to find that Flanagan, who was acting as train dispatcher, negligently started the train while the deceased was between the engine and the first car, or in a position of danger, and that the deceased was free from contributory negligence. (*Johnson* v.

*H. R. R. R. Co.*, 20 N. Y. 65; *Galvin* v.. *Mayor, etc.*, 112 N. Y. 223; *Holt* v. *N. Y. C. R. R. Co.*, 111 N. Y. 199; *Woodworth* v. *N. Y. C. & H. R. R. R. Co.*, 55 App. Div. 23; *Tolman* v. *S. R. R. Co.*, 98 N. Y. 198; *Schafer* v. *City of New York*, 154 N. Y. 466; *Smith* v. *N. Y. C. & H. R. R. R. Co.*, 177 N. Y. 224.) Train Dispatcher Coleman was a superintendent under the provisions of the Employers' Liability Act, and Flanagan, who was acting as train dispatcher at the time of the accident, was a "person acting as superintendent with the authority or consent of" the defendant under the act; but independent of the statute the defendant was liable for his negligence. (*Hankins* v. *N. Y. & L. E. R. R. Co.*, 142 N. Y. 416; *Sheehan* v. *N. Y. C. & H. R. R. R. Co.*, 91 N. Y. 332; *Dana* v. *N. Y. C. & H. R. R. R. Co.*, 92 N. Y. 639; *Davis* v. *N. Y., N. H. & H. R. R. Co.*, 159 Mass. 532; *Malcolm* v. *Fuller*, 152 Mass. 160; *Knight* v. *O. W. Co.*, 177 Mass. 445.)

*Joseph H. Adams* and *Charles A. Gardiner* for respondent. There was no evidence to justify a submission to the jury of the question of defendant's negligence, the mere fact of the happening of the injury not being proof thereof or that Flanagan, who gave the preliminary signal to start the train, was in fault. (*Cosulich* v. *S. Oil Co.*, 122 N. Y. 118, 123; *Weston* v. *City of Troy*, 139 N. Y. 281; *Olive* v. *W. Marble Co.*, 103 N. Y. 292; *Losee* v. *Buchanan*, 51 N. Y. 476; Wood on Ev. [5th Lond. ed.] 402; *Cahill* v. *Hilton*, 106 N. Y. 512; *Crown* v. *Orr*, 140 N. Y. 450; Wood on Master & Servant, §§ 345, 346; *Baulec* v. *N. Y. & H. R. R. Co.*, 59 N. Y. 356; *Malone* v. *Hathaway*, 64 N. Y. 5; *Borden* v. *D., L. & W. R. R. Co.*, 131 N. Y. 671; *Dobbins* v. *Brown*, 119 N. Y. 188; *Carlson* v. *P. B. Co.*, 132 N. Y. 273; *Rose* v. *B. & A. R. R. Co.*, 58 N. Y. 217; *Warner* v. *E. R. R. Co.*, 39 N. Y. 468; *Lawson* v. *Merrall*, 69 Hun, 278; *Sullivan* v. *T. A. R. R. Co.*, 19 App. Div. 195, 197; *Sorenson* v. *K., etc., Co.*, 56 Wis. 338.) Plaintiff failed to prove her intestate's freedom from contributory negligence, and this lack of proof is fatal to her

recovery. (*Getman* v. *D., L. & W. R. R. Co.*, 162 N. Y. 21; *Wieland* v. *D. & H. C. Co.*, 167 N. Y. 19; *Wiwirowski* v. *L. S. & M. S. R. Co.*, 124 N. Y. 420; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75 N. Y. 330; *Tolman* v. *S., B. & N. Y. R. R. Co.*, 98 N. Y. 198; *Rodrian* v. *N. Y., N. H. & H. R. R. Co.*, 125 N. Y. 526; *Reynolds* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y. 248; *Bond* v. *Smith*, 113 N. Y. 378; *Whalen* v. *C. G. L. Co.*, 151 N. Y. 70.) Flanagan was not a person whose sole or principal duty was that of superintendence; nor was he acting as superintendent in the absence of Coleman. (*Gardner* v. *N. E. T. & T. Co.*, 170 Mass. 156; *Fitzgerald* v. *B. & A. R. R. Co.*, 156 Mass. 293; *Cashman* v. *Chase*, 156 Mass. 342; *Shephard* v. *B. & M. R. R. Co.*, 158 Mass. 174; *O'Brien* v. *Rideout*, 161 Mass. 170; *Dowd* v. *B. & A. R. R. Co.*, 162 Mass. 185; *O'Neil* v. *O'Leary*, 164 Mass. 387; *Cunningham* v. *L. & B. S. R. Co.*, 170 Mass. 298; *Riou* v. *R. G. Co.*, 171 Mass. 162; *Murray* v. *Rivers*, 174 Mass. 46.)

CULLEN, Ch. J. This action is brought under the Employers' Liability Act (Chap. 600, Laws of 1902), the plaintiff having given the notice to the defendant required by that statute. The plaintiff's intestate was a coupler in the employ of the defendant in its yard at Rector street in the city of New York. At this point the elevated trains coming from the north were switched over to the north-bound track. An engine stood on that track ready to be attached to what had been the rear of the incoming train. When the train was brought to a stop the engine was backed down to the train and coupled with it, while the engine at the other end of the train was detached. The deceased's business was to couple the waiting engine to the train. In the performance of this duty it was necessary for him to go between the engine and the car platform, couple the drawbar on the engine to that on the car by a link and pin, connect the two pieces of vacuum hose by which the brakes are operated and fasten two safety chains from the engine to the car, one being on

each side of the car. At this yard one Coleman was the train dispatcher. By the rules of the company he had " charge of the yard and the sidings at stations where trains are made up, the movement of trains therein and of the yard force employed at those points" (rule 183); the enginemen were directed to obey the orders of the " train dispatcher in regard to shifting, making up trains and starting from terminals while engines are in train service" (rule 123). It was the duty of the train dispatcher to stand on the platform where he could observe the coupling of the fresh engine to the train. When that was done and the time for departure had arrived, by pressing a button he sounded an electric gong which notified the conductor and guards on the train that the train was ready to start. The signal to start was thereupon transmitted by the guards and conductor to the engineer, who would then start the train. In the ordinary operation of the road about two minutes elapsed from the time the train entered the station from the north till it started on its return trip. Coleman discharged other duties which at times required him to turn over the management and dispatch of the trains to his telegraph operator or train clerk, one Flanagan, who acted for Coleman on this occasion. Such was the ordinary course of business as it had continued for three years. On the occasion of the accident which is the subject of this suit, the plaintiff's intestate was last seen between the car and the engine, apparently about to make the coupling. Shortly after Flanagan sounded the gong for the train to move, and after the signal had been transmitted by the guards and conductor to the engineer the train started. In a very short period a cry was heard from underneath the car, the train stopped and deceased was found crushed at the rear truck of the forward car. The engineer testified that about eight seconds elapsed from the time the dispatcher sounded the gong till the train started and he heard the cry of the deceased. A witness not connected with the road says that about a second of time elapsed between the two occurrences. The engineer states that his engine moved some ten or eleven feet before

he stopped it. On going to the rear of his engine he found that the coupling had been completely effected. Flanagan was not put on the stand by either side. At the close of the evidence the court dismissed the complaint and this ruling has been affirmed by the Appellate Division by a divided court.

It is quite evident that there are three questions involved in this case : 1. The sufficiency of the evidence to show how the accident happened. 2. If it happened while the deceased was coupling the train or before he had withdrawn from between the car and engine to a place of safety, was Flanagan negligent in giving the signal for the train to start? 3. Was the defendant, under the statute, liable for Flanagan's negligence in this respect? As to the second question the learned Appellate Division was of opinion that if Flanagan started the train before the deceased had withdrawn from between the car and engine he was guilty of negligence, or at least the jury might so find. We think the proposition too clear to require any discussion. The third question, as to the liability of the defendant for the negligence of Flanagan, the learned court did not determine, but placed its decision affirming the nonsuit below on the ground that the plaintiff had not shown where the deceased was at the time Flanagan sounded the gong, or that he was then actually engaged in his work. It was said by the learned court : " It is as reasonable to suppose that he (deceased) had stepped back from the car, having completed his work of coupling the train with the engine, and that in some way his clothing was caught by the train, or as the train started he slipped and fell, or that he attempted to cross between the engine and the car to the platform, as it is to suppose that the starter started the train when the deceased was between the engine and the car." To this view we cannot assent. It was a question of fact for the jury to determine how the accident occurred. We concede that there must be some evidence upon which the jury can base its determination, and that determination must not be mere conjecture. But the only person with the possible exception of Flanagan

who knew the exact position of the deceased when the train started was the deceased himself. " If he had survived the accident it would have been necessary for him, in order to meet the burden of proof, to state what he did and what he tried to do fully and explicitly ; but as he is dead less evidence is required of his personal representatives." (*Schafer* v. *Mayor, etc., of N. Y.*, 154 N. Y. 466.) The last position in which the deceased was seen before the accident, was standing at the platform of the car ready to make the coupling. That he went between the cars and made the coupling is certain, not only from the testimony of the engineer of the train, but from the fact that the train moved, and there is no evidence to show that from that position he ever came out. If the engineer's estimate of the distance his engine moved, ten or eleven feet, is correct, the place where the deceased was found under the cars would seem to indicate that he had been struck down at the very place where he made the coupling. In addition to this, when there is considered the very brief period of time during which the deceased was compelled to do the several parts of his work, putting the link through the drawheads, connecting the vacuum hose and fastening the safety chains, we think the jury might well have found that the train was started before the deceased, after the completion of his work, had been able to get out from between the cars.

It may be conceded that apart from the provisions of the Employers' Liability Act the defendant would not have been liable to its employees for the negligence of either Coleman or Flanagan. (*Loughlin* v. *State of N. Y.*, 105 N. Y. 159.) By that statute, however, a new liability was imposed on the master. Section 1 gives an employee or his personal representative, in case the injury results in death, the right to compensation where he has been injured by reason " of the negligence of any person in the service of the employer entrusted with and exercising superintendence, whose sole or principal duty is that of superintendence, or in the absence of such superintendent, of any person acting as superintendent with the authority or consent of such employer." The learned counsel for the respond-,

ent concedes that Coleman was a superintendent within the
terms of the statute.    Coleman's own evidence was sufficient
to justify a finding that the defendant consented to Flana-
gan's acting as his substitute in starting the trains from the
yard.    But the learned counsel for the respondent contends
that the particular duty of seeing that the coupling was made
and the coupler safely withdrawn and thereupon giving the
signal to start the train, whether performed by Coleman or
Flanagan, was not in the nature of superintendence, but
merely a detail of the work, for negligence in the discharge
of which duty, by either employee, the defendant was not
liable under the statute.    This is the most serious question pre-
sented by the case.    Doubtless had the train been started by the
engineer without a signal, or had the conductor or one of the
guards improperly given a signal for the train to move, it
would have been the act of a fellow-servant and the defend-
ant would not have been liable therefor.    But it does not fol-
low that the act of a train dispatcher in sending out the train
is to be regarded in the same light or as of the same character.
There are many acts the nature of which is such as to clearly
establish their character, whether of ordinary labor or of super-
intendence, and this regardless of whether the act may be done
on a particular occasion by a superintendent or by an ordinary
workman.    On the other hand, there are many acts which are
indeterminate in their character and whether they are to be
deemed acts of superintendence or not may depend on the
manner in which the business is conducted and the rank and
position of the employee to whom the performance of those
acts is intrusted.    Thus we·said in *Eaton* v. *N. Y. C. &
H. R. R. R. Co.* (163 N. Y. 391): "The question whether a
faulty act or omission complained of is negligence in the dis-
charge of the duty of the master as such or is a detail of the
work, may depend on the manner in which the work is car-
ried on."    In the present· case under the defendant's rules
already quoted and the ordinary conduct of its business the
making up of the trains and their dispatch from the yard
were functions imposed on the superintendent or train dis-

patcher as a part of his duty as such. Both were duties or functions of superintendence. The failure of Flanagan, if there were such, was in his failure to properly supervise the preparation of the train, and in failing to ascertain that the engine had been connected with the cars and that the employee engaged in that labor had withdrawn to a place of safety. If he had done this work properly and the accident had been caused by mistake of some other employee in transmitting Flanagan's directions, the question would be entirely different. (*Hankins* v. *N. Y., L. E. & W. R. R. Co.*, 142 N. Y. 416.) The case at bar is quite similar to one decided by the Supreme Court of Massachusetts under a statute substantially the same as our own. In *Davis* v. *N. Y., N. H. & H. R. R. Co.* (159 Mass. 532) the plaintiff was one of a gang of workmen employed in repairing tracks. It was the duty of the foreman of the gang to warn the workmen of the approach of trains. By failure to give such warning the plaintiff was run down. A recovery by the plaintiff was upheld. There may not be entire harmony between the various Massachusetts decisions that have arisen under this legislation. Possibly they give more weight to the consideration of the general character of the foremen's or superintendents' duties and less to the character of the particular act in which the misconduct occurs than we would be disposed to accord to those factors. Nevertheless the case cited seems well justified on principle and its authority has not been impaired by any subsequent decisions of the Massachusetts courts.

The judgment should be reversed and a new trial granted, costs to abide the event.

O'Brien, Bartlett, Haight, Martin, Vann and Werner, JJ., concur.

Judgment reversed, etc.