(101 App. Div. 448.)

### McBRIDE v. NEW YORK TUNNEL CO.

(Supreme Court, Appellate Division, First Department.   February 10, 1905.)

1. MASTER AND SERVANT—EMPLOYERS' LIABILITY ACT—NEGLIGENCE OF SUPERINTENDENT.

A foreman whose duties were to direct drillers where to drill holes and to set off the blast, and who had immediate superintendence of the work, and of the men engaged therein, whom he had authority to discharge, was, in setting off the blast, engaged in an act of superintendence, within Laws 1902, p. 1748, c. 600, § 1, giving a cause of action for injury to an employé caused by the negligence of any person in the service of the employer intrusted with and exercising superintendence.

2. SAME.

The fact that there was a general superintendent, who did not take immediate charge of the details of the work, over such foreman, did not relieve the master from liability for the latter's acts.

3. SAME—CONTRIBUTORY NEGLIGENCE—QUESTIONS OF FACT.

Under the express provisions of Laws 1902, p. 1750, c. 600, § 3, whether an employé was guilty of contributory negligence by continuing in his employment with knowledge of the risk of injury, is a question of fact for the jury.

Van Brunt, P. J., dissenting.

Appeal from Trial Term, New York County.

Action by Mary McBride, as administratrix of one McBride, deceased, against the New York Tunnel Company.   From a judgment dismissing the complaint, plaintiff appeals.   Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTER-
SON, O'BRIEN, and INGRAHAM, JJ.

A. C. Brown, for appellant.
Hoffman Miller, for respondent.

HATCH, J.   The complaint herein avers a cause of action un-
der the provisions of chapter 600, p. 1748, of the Laws of 1902, com-
monly called the "Employers' Liability Act." The action seeks to
recover damages for the claimed negligent act of the defendant
resulting in the death of the plaintiff's intestate.  The defendant is
a domestic corporation, and on the 9th day of November, 1903, was
engaged in excavating two parallel tunnels under the bed of the
East river, between the boroughs of Manhattan and Brooklyn, in
the city of New York, the purpose of the excavation being to pro-
vide a place for the construction and operation of a railroad.  The
excavation was through solid rock, and the prosecution of the work
involved its blasting out and removal.  The evidence upon the part
of the plaintiff tended to establish that one Martin was employed
by the defendant as foreman of the work carried on in the south-
erly tunnel.  The men employed under Martin's supervision con-
sisted of rock drillers, who drilled holes in the rock, a blaster, who
held a certificate issued to him by the explosives commission of the
city of New York, as authorized by the ordinances of the city of
New York passed pursuant to the provision of subdivision 3 of
section 1620 of the Greater New York Charter (Laws 1901, p. 657,
c. 466), and men called "muckers," who removed the broken rock
and débris after a blast had been exploded.  Martin directed the
drillers where they should drill holes for the reception of the ex-
plosives, and, when drilled and ready therefor, directed McBride,
plaintiff's intestate, to prepare the blast, and, when prepared and
ready for explosion, he directed all of the men at work in the head-
ing of the tunnel to depart therefrom to a place of safety while
the blast was being fired.  The explosive used was dynamite, and the
method of its use was to place sticks thereof in the several holes
which had been drilled, connect them with electric wires and when
connected, the men were directed to pass out from the heading, and,
when they were all removed to a place of safety, McBride's duty
was to apply the electric current by means of a switchboard out-
side the air lock which exploded the blast.  The evidence was suf-
ficient to authorize the jury to find that Martin was invested with
the duty of superintendence of the work thus carried on.  On the
morning of the 9th day of November, 1903, McBride was sum-
moned to prepare the blast.  He had inserted the dynamite in the
holes, and had connected the electric wires therewith.  Martin had
directed the men to cease work in the fore part of the tunnel and
retire to a place of safety.  McBride and three others were still in
the heading.  Martin, who was hurrying the progress of the work,
was informed that four men were still in the heading.  He ran in
that direction, but immediately returned, spoke to one Burney,
who asked him what was the matter, to which Martin replied,

"Nothing; everything is all right." He immediately passed to the switchboard, turned the switch, and set off the blast. At that time McBride had just finished attaching the last wire, and, as he straightened up from a stooping position, the blast went off, inflicting mortal injuries, from which he died in a few moments thereafter. The other workmen were injured, but not seriously. The court held that Martin, in setting off the blast, was not engaged in any act of superintendence imposed upon him by the master; that therefore the plaintiff did not bring her case within the terms of the statute; and, upon motion of the defendant, it dismissed the complaint.

It may be conceded that, independent of the statute, the setting off of the blast by Martin would be construed as the act of a fellow servant, without regard to the nature of his position, and no liability would attach to the master by reason of such act. Crispin v. Babbitt, 81 N. Y. 516, 37 Am. Rep. 521. The statute, however, seems to have been passed to meet such a case, and by its terms has created a new cause of action. Section 1 provides:

"Where, after this act takes effect, personal injury is caused to any employee who is himself in the exercise of due care and diligence at the time * * *. By reason of the negligence of any person in the service of the employer entrusted with and exercising superintendence whose sole or principal duty is that of superintendence, or in the absence of such superintendent, of any person acting as superintendent with the authority or consent of such employer; the employee, or in case the injury results in death, the executor or administrator of a deceased employee who has left him surviving a husband, wife or next of kin, shall have the same right of compensation and remedies against the employer as if the employee had not been an employee of nor in the service of the employer nor engaged in his work."

Section 3, among other things, provides that an employé shall not be presumed to have assumed the risks of employment, nor assented thereto, until the employer has exercised due care in providing for the safety of his employés, and has complied with the laws affecting or regulating such business or occupation. "The question whether the employé understood and assumed the risk of such injury, or was guilty of contributory negligence, by his continuance in the same place and course of employment with knowledge of the risk of injury shall be one of fact, subject to the usual powers of the court in a proper case to set aside a verdict rendered contrary to the evidence." Tested by the standard established by the act, it appears that Martin, as foreman, had the immediate and general superintendence of the prosecution of the work in this heading. It was his duty to supervise the preparation of the work of the drillers for the reception of the explosive, to direct the placing of the dynamite in the holes, to cause the men to remove therefrom to a place of safety prior to the firing of the blast, and also to direct that the blast be fired. Every man employed therein, without regard to his grade, was subject to his direction and control, and the evidence tended to establish that he was invested with authority to discharge the men so employed. The case in principle, is therefore brought directly within the decision of McHugh v. Manhattan Ry. Co., 179 N. Y. 378, 72 N. E. 312. There-

in an employé of the railroad company, whose business it was to couple the engine to an elevated train where the same was made up, was killed by the starting of the train while engaged in making a coupling. The decision of the case turned upon whether the starting of the train was an act of superintendence or a mere detail of the work. One Flanagan had been substituted to perform the duties of the regular train dispatcher at the time when the accident occurred. In disposing of the question, it was said by Cullen, C. J.:

"In the present case, under the defendant's rules already quoted and the ordinary conduct of its business, the making up of the trains and their dispatch from the yard were functions imposed on the superintendent or train dispatcher as a part of his duty as such. Both were duties or functions of superintendence. The failure of Flanagan, if there were such, was in his failure to properly supervise the preparation of the train, and in failing to ascertain that the engine had been connected with the cars, and that the employé engaged in that labor had withdrawn to a place of safety."

This language precisely fits this case. Martin had charge of the prosecution of the work, the preparation and firing of the blast, and the removal of the men to a place of safety. In the discharge of these duties he was acting as superintendent, and, within the terms of the act, liability is imposed upon the master for his neglect.

While it is true that there was a general superintendent of the work over Martin, yet he did not assume to take the immediate charge of the details in prosecuting the work, but delegated that branch of superintendence to Martin, who thereby became the alter ego of the master. It was precisely the same difference which existed between Flanagan, the train dispatcher in the McHugh Case, and the general superintendent of the railway. Such fact does not relieve the defendant from responsibility for the acts of Martin.

It is further suggested that plaintiff's intestate was guilty of contributory negligence in connecting the wires so as to communicate with the switch, or in separating them at a point not in immediate proximity to the switchboard. Such question, however, became one of fact under the terms of the act, which required its submission to the jury.

These views lead us to the conclusion that the judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

PATTERSON and O'BRIEN, JJ., concur. INGRAHAM, J., concurs in result. VAN BRUNT, P. J., dissents.