QUINLAN v. LACKAWANNA STEEL CO.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1905.)

1. MASTER AND SERVANT—EMPLOYERS' LIABILITY ACT—NEGLIGENCE OF SUPERINTENDENT.

    An employé whose duty it is to signal another employé in charge of a crane to operate the crane, and who gives directions for the carrying out of the orders of a superior, is not a superintendent within the meaning of Laws 1902, p. 1748, c. 600, making the master liable for injuries caused by reason of the negligence of any person intrusted with and exercising superintendence, whose sole and principal duty is that of superintendence.

    [Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 427, 431.]

2. SAME—ACT OF SUPERINTENDENCE.

    The act of a superintendent in negligently turning on a current of electricity is not an act of superintendence within Laws 1902, p. 1749, c. 600, § 2, making the master liable for injuries to a servant caused by the negligence of a person intrusted with and exercising superintendence.

    Spring and Hiscock, JJ., dissenting.

Appeal from Trial Term, Erie County.

Action by Patrick Quinlan against the Lackawanna Steel Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Charles L. Feldman (George B. Burd and John T. Ryan, of counsel), for appellant.

Rogers, Locke & Babcock, for respondent.

STOVER, J. The action is negligence. Plaintiff was in the employ of the defendant, engaged in operating a crane by electricity. Plaintiff had operated the crane for an hour or two, beginning at 7 o'clock in the morning, on the day of the accident. While operating the crane his position was in a cage at one side of the crane. Just before the accident he left his position in the cage and went upon the carriage of the crane to oil some portion of the machinery. In doing so he passed upon the top of one of the girders, and near the drums which carried the cables operating the crane. While in this position he received a shock from the electric wires, and fell from the carriage to the floor below, sustaining the injuries for which he seeks to recover. Upon the trial the plaintiff was nonsuited, and this appeal is taken.

There is no direct testimony in the case to show just how the plaintiff received the shock, or what caused the current of electricity to pass through the wires at that particular time. Plaintiff's testimony was that at about the time he received the shock he saw one Knapp leave the cage and pass down on the ladder leading from the cage below. Knapp, it is claimed by the plaintiff, was a superintendent under the employers' liability act (Chapter 600, p. 1748, Laws 1902); that the current was turned on by Knapp; and that this was a negligent act for which the company was liable. The testimony with reference to Knapp's position was to the effect that the plaintiff obeyed his instructions in operating the crane. As the plaintiff himself states:

"During all the time I worked there I didn't see Greenough [who was the general superintendent] give any orders to any of the men connected with the gang that I was working with. He would give his orders to Mr. Knapp, and Mr. Knapp gave the orders to the men. I didn't see Knapp do any work except to give the orders to the men. * * * I went to work that morning about seven o'clock. I worked until about nine o'clock, operating the crane. Mr. Knapp was there that day, and he directed my movements up till nine o'clock."

There was some further evidence with reference to the action of Knapp, but we think it falls far short of showing, or permitting an inference to be drawn, that Knapp was a person whose sole or principal duty was that of superintendence. The action in question created a new liability on the part of the employer, and it was undoubtedly intended to make the employer liable for the acts of a superintendent while engaged in the act of superintendence; but it was not intended that every employé who should, for the moment, have direction of work or of laborers, should be considered a superintendent within the meaning of the law. The evidence in this case shows that Knapp occupied a position on the floor; that when the crane was ready for operation he gave the signal to the plaintiff, and the plaintiff thereupon operated the crane. The plaintiff had control entirely of the crane and its operation. He was the only person in charge of the crane, and it would seem

that the position of Knapp was that of a foreman, or man employed to give directions for the efficient carrying out of the orders of the superintendent, Greenough. It is not simply the power to instruct, or even to direct in a particular manner, that constitutes superintendence within the meaning of the law, but it must be such a supervision and charge as gives power of direction; and it must be with authority to direct the manner and means of prosecuting the work in charge. It is not sufficient to show that a man directed another as to the time when it was necessary to operate a crane, or that he even directed a number of men with reference to unimportant details of their labor; but the proof should be further. It should show that the man was vested with some power or discretion to exercise authority beyond the narrow limits of one acting under a special direction. The act itself imposed, as above stated, a new, and also a very large, responsibility upon an employer. It should be given its fair intent and purpose, but it should not be enlarged by judicial construction to embrace other than conditions fairly and clearly within its import. We think the act must be construed to create a liability against the employer only when the superintendent is engaged in the act of superintending. He cannot for the moment leave his duty of superintendence and act upon his own volition, and not within the scope of any act of superintendence for the benefit of the master, and create a liability against the master and in favor of a co-employé.

In this case the evidence, while it does not show that Knapp turned on the current, yet assuming that the evidence would warrant a deduction that the current was turned on by Knapp, it was clearly not an act of superintendence at the time. We think that the distinction made in Cashman v. Chase, 156 Mass. 342, 31 N. E. 4, is one well made, that even the superintendent cannot, by assuming to discharge the duties of an ordinary laborer or workman, in which there is no exercise of superintendence, create a liability against the master. In the case under consideration, under the evidence, it was Knapp's duty to maintain his position on the floor. He was called by plaintiff the "floor boss," and directed the plaintiff when to operate the crane. If he exceeded his duty in that regard, and negligently turned on the current, it was not an act of superintendence, but an act of interference, for which the master was not liable. Upon the whole evidence in the case it does not appear that Knapp was vested with such authority in the general direction of the business of the master as to constitute him a superintendent under the employers' liability act, or that the act, assuming it was the act of Knapp that caused the injury, was one committed while engaged in the superintendence of the master's business; and still further we think it may be fairly said that the evidence would not justify a finding that the current was turned on by Knapp, for common experience is that a current such as it is claimed inflicted the injury upon the plaintiff might have occurred without the intervention of Knapp, and the evidence is not sufficient to exclude a finding that the injury could not have occurred except for the agency of Knapp.

We think the nonsuit was right, and the judgment should be affirmed.

SPRING, J. (dissenting). The defendant carries on an extensive business, consisting of several departments. A man named Greenough was general superintendent, and Knapp represented him in the room in which plaintiff was employed when Greenough was absent. Knapp was therefore "acting as superintendent" in the absence of Greenough. Knapp had under his charge 40 or 50 men. He did no actual work whatever, but gave orders to these men. Among the pieces of machinery operated under the direction of Knapp was the electrical contrivance the actual manual operation of which was conducted by the plaintiff. This crane was a part of the machinery in this room, and was under the control of Knapp. He directed the plaintiff to operate it, and the accident resulted. I think, within the authorities and within the plain meaning of the employers' liability act, Knapp was acting as a superintendent. Section 2, c. 600, p. 1749, Laws 1902; McHugh v. Manhattan Ry. Co., 179 N. Y. 378, 72 N. E. 312; McBride v. N. Y. Tunnel Co., 101 App. Div. 448, 92 N. Y. Supp. 282. I am also of the opinion that the act was one of superintendence. This crane was not operated except under the direction of Knapp. The plaintiff had no right to move it unless directed to do so. It was a contrivance necessary to the transaction of the business, and within the radius of Knapp's employment.

I think the nonsuit was error, and the judgment should be reversed.

HISCOCK, J. I dissent. It seems quite clear that a jury would have had a right to find that Knapp was a superintendent, or acting as superintendent, within the meaning of the statute, and that he turned on the electricity which injured plaintiff. The closer question is whether the jury would have had a right to find further that his act in so doing was part of, or in connection with, his duties as superintendent, rather than a mere individual personal act for which the employer would not be liable. I think, however, that it would have been permissible for them to draw the former inference. Knapp was constantly at work around the shop superintending men and giving directions with reference to the movement of this crane. Those were some of the duties which he was engaged in at the time of the accident. If he had ordered plaintiff or some other employé to turn on the electricity and set the crane in motion, I think that the fair presumption would be, in the absence of contrary evidence, that he did this in pursuance of his duties. If this conclusion is correct, then I think it would be just as permissible for the jury to find that when he attempted to set the machine in motion by his own hand, rather than by that of another acting under his orders, it was in the prosecution of his authority, and the purpose of promoting the work which was subject to his guidance. McBride v. N. Y. Tunnel Co., 101 App. Div.

94 N.Y.S.—60

448, 92 N. Y. Supp. 282; Randall v. Holbrook Contracting Co., 95 App. Div. 339, 88 N. Y. Supp. 681; Roche v. Lowell Bleachery, 181 Mass. 480, 63 N. E. 943.