ANNIE GALLAGHER, as Administratrix of the Estate of CORMACK GALLAGHER, Deceased, Respondent, *v.* EDGAR B. NEWMAN, Appellant.

1. EMPLOYERS' LIABILITY ACT (L. 1902, CH. 600) — WHEN EMPLOYER LIABLE THEREUNDER. The Employers' Liability Act (L. 1902, ch. 600), which provides for a recovery by the administrator of a deceased employee, the same as though the intestate had not been an employee, where the injury was caused "by reason of the negligence of any person in the service of the employer entrusted with and exercising superintendence whose sole or principal duty is that of superintendence," created a new and additional cause of action which was not recognized by the common law; but an employer is not liable for the negligent act of an employee simply because the latter ordinarily is engaged in discharging duties of superintendence, nor, on the contrary, is the employer exempted from liability for such act simply because it is one which may be described in some sense as "a detail of the work;" the employer is liable or not accordingly as the negligent act is one of or pertaining to superintendence, or is one which is the subject of performance by ordinary, subordinate employees, and including no element of superior duty, supervision or command.

2. SAME — ACTION TO RECOVER FOR DEATH OF EMPLOYEE CAUGHT IN SHAFTING OF FACTORY — ERRONEOUS CHARGE. In an action, brought under said statute, to recover for the death of plaintiff's intestate which resulted from his being caught in some shafting while engaged in defendant's factory, it appeared that, under the orders of a workman who was alleged to be and who may be assumed to have been the superintendent of

the room in which he was working, the decedent was engaged with another workman in replacing a belt upon a pulley; that they were assisted in this work by said superintendent and that, while decedent was endeavoring by hand to slip the belt upon the pulley which was then disconnected from the power shaft and was not moving, the superintendent, suddenly and without warning, and probably for the purpose of assisting in rolling the belt on the pulley, connected the pulley shaft with the moving power shaft, so that the pulley was suddenly thrown into motion and decedent was caught and injured thereby. The trial court charged in effect that the superintendent was powerless to divest himself of his character as such and that every act performed by him, including the act resulting in the accident, was performed by him as superintendent rather than as an ordinary co-worker, and for the negligent character of which the defendant was responsible. *Held,* error; that it was for the jury to determine whether the act resulting in the injury was the act of a superintendent or that of a fellow-servant, and if the latter, the defendant was not liable.

*Gallagher* v. *Newman,* 119 App. Div. 865, reversed.

(Argued December 11, 1907; decided January 7, 1908.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 18, 1907, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*L. Sidney Carrère* for appellant. Brady, even if a foreman, was performing a detail of the work and exercising the judgment of a fellow-servant when he performed the act of turning on the power at the time of the accident, and the court erred in refusing to so charge. (*Quinlan* v. *L. S. Co.,* 107 App. Div. 176; *Bannon* v. *N. Y. C. & H. R. R. R. Co.,* 101 App. Div. 547; *Guilmartin* v. *Solvay Process Co.,* 115 App. Div. 794; *McConnell* v. *M. I. W. & D. D. Co.,* 187 N. Y. 341; *Hughes* v *Russell,* 105 App. Div. 144; *Bellegarde* v. *U. B. & P. Co.,* 90 App. Div. 577; *McBride* v. *N. Y. Tunnel Co.,* 101 N. Y. 448; *McHugh* v. *M. Ry. Co.,* 179 N. Y. 378; *Hope* v. *S. & L. C. Co.,* 105 N. Y. Supp. 372; *McLaughlin* v. *I. St. Ry. Co.,* 101 App. Div. 134.)

*James A. Allen* for respondent. There was no error in the charge. (*Smith* v. *Matthews*, 152 N. Y. 152; *Chellis* v. *Chapman*, 125 N. Y. 214; *Sperry* v. *Miller*, 16 N. Y. 407.)

HISCOCK, J. This action was brought under the Employers' Liability Act (Laws of 1902, chapter 600) to recover damages for the death of plaintiff's intestate, which resulted from his being caught in some shafting while engaged as a workman in defendant's factory. The accident was caused by what may be assumed upon this argument to have been the negligent act of one Brady in setting in motion the shaft upon which intestate was working, without warning, said Brady being, as it also may be assumed, appellant's superintendent of the room and machinery wherein and whereon the intestate was injured.

Amongst other complaints which the appellant makes against the judgment which was recovered against it, is the one that it was entitled to have the jury say whether or not the act of Brady, resulting in intestate's death, was one performed in the line of his duty as superintendent, rather than by him as a mere co-employee, and that this right was denied. In order that we may the more intelligently discuss the question thus presented, and which arises upon the charge and refusal to charge by the trial justice, we shall briefly recapitulate the material facts and then state the rules which we think properly governed the disposition of the case, and finally determine whether they were applied.

In one of the rooms of appellant's factory there were two lines of shafting, each with a pulley on it. One line was several feet above and the other somewhat below the floor. The belt having slipped off from one of the pulleys, Brady called on the intestate and another workman to assist in readjusting the same. The upper shaft consisted of two pieces, the ends of both at the point of junction having upon them something in the nature of teeth, which fitted into each other. There was a lever or handle extending from this upper shaft toward the floor, by which the junction

of the two ends could be broken and motion withdrawn from that part having on it the pulley. By means of the same lever or handle the pulley end of the shaft could be brought into junction with the other part, which continued in motion unless the power was shut off, and motion thus be given to the former. The intestate was endeavoring by hand to slip the belt upon the upper pulley, this part of the shaft having been disconnected and having no motion, except as the third employee moved it with his hands for the purpose of helping intestate. Brady was engaged in adjusting the belt on the lower pulley. After they had worked for a time and the intestate had got the belt part way on his pulley, Brady, without any warning, with the before-mentioned lever threw the part of the shaft on which intestate was working into motion and the latter was caught and injured. It seems to be assumed that Brady's object in putting the upper shaft in motion was to assist in rolling the belt on the upper pulley and thus accomplish the purpose toward which all three of the men had been engaged.

The Employers' Liability Act provides for a recovery by the administrator of a deceased employee the same as though the intestate had not been an employee where the injury was caused " by reason of the negligence of any person in the service of the employer entrusted with and exercising superintendence whose sole or principal duty is that of superintendence." As was said by this court in *Harris* v. *Baltimore Machine & Elevator Works* (188 N. Y. 144) this statute "gave an additional cause of action ; because it prescribed that a master shall be liable for the negligence of the superintendent, or the person acting as such. * * * At common law such a liability was not recognized, unless the superintending servant was the *alter ego* of the master with respect to the work."

This court may be regarded as having formulated under this act the principles that an employer is not liable for the negligent act of an employee simply because the latter ordinarily is engaged in discharging duties of superintendence, nor, on the

contrary, is the employer exempted from liability for such act simply because it is one which may be described in some sense as " a detail of the work; " but the employer is liable or not accordingly as the negligent act is one of or pertaining to superintendence, or is one which is the subject of performance by ordinary, subordinate employees, and including no element of superior duty, supervision or command.

These principles were last discussed and approved by this court in the case of *Guilmartin* v. *Solvay Process Company* (189 N. Y. 490). In that case some of the defendant's employees were engaged in readjusting a belt on a pulley. One Mullin was the foreman of the shift or gang to which the plaintiff belonged and had power to stop the machinery in case of accident or emergency. On being informed of the accident he caused the movement of the engine to be slowed down and then directed the plaintiff with other workmen to cut the lacing of the belt, he personally joining in the work. After the belt was cut he directed one of the workmen to throw the loose end on the floor. The shaft pulley being relieved from the strain of the taut belt again revolved with the shaft and caused the loose end of the belt to strike and injure the plaintiff. The plaintiff recovered a judgment in the trial court, which was reversed by the Appellate Division, on the ground that the negligence of Mullin in failing to stop the engine, if negligence it was, was the negligence of a fellow-servant in a detail of the work for which the master was not liable. Judge CULLEN, writing in behalf of this court, for a reversal of the decision of the Appellate Division, said : " To render the master liable, the negligence must not only be on the part of the person who is acting as superintendent but also in an act of superintendence. But if the act be of that character the fact that in a sense it is a detail of the work will not relieve the master from liability. In the prosecution of many, if not most, works, superintendence is a detail of the work, in the accurate use of that term. It is often so denominated in the older cases and properly so, because before the statute it was unnecessary to distinguish between negligence of a

superintendent and that of a co-laborer of the same grade as that of the person injured so far as any liability of the master was involved. The statute has changed this. In the *McHugh Case* (179 N. Y. 378) the defendant was held liable for the negligence of a train despatcher in starting a train. The despatcher performed that act, doubtless, scores of times a day, and its performance was a mere detail of his ordinary day's work. Therefore, -the question in any case brought under the statute is not whether the negligent act is a detail of the work, but whether it is a detail of the superintendent's part of the work, or of the subordinate employees and servants. In the present case had the foreman Mullin attempted to stop the engine himself and so carelessly done the work as to cause injury to the other employees, that might very well be deemed the negligence of a co-servant for which the master would not be liable, but the determination of the question whether the machinery should be stopped before the men were put to work on it was of a very different character. · None of the other workmen could direct the engine to be stopped. He alone had that power. His direction in reference thereto or failure to direct was an act of superintendence. At least the jury was authorized to so find."

In the present case the act of Brady which resulted in the intestate's death is doubtless near the border line which separates superintendence from mere employment and manual labor. If, without taking any part in the actual adjustment of the belt on the pulleys, he had superintended the operation and had directed the shifting of the lever which put the shaft in motion and injured intestate, there could be little doubt as to the character of his act as being one of superintendence. That, however, is not the case. He took actual part with the others in the manual labor directed toward the readjustment of the belt, the others working at one end of it and he at the other, and, as we have already said, it seems permissible to infer that his act in putting the shaft in motion was a mere continuance of his labor for the purpose of permitting the belt to be still further rolled on to the pulley. It fairly

29

may be contended, in the language of Judge BRALEY, in *Meagher* v. *Crawford Laundry Machinery Co.* (187 Mass. 586), that he was "engaged with the men in a common task of manual labor," and we think that the appellant was entitled to have the jury say whether his act in moving the lever was comprehended within the lines of his duty as superintendent or was the act of an ordinary employee engaged with others in a common joint attempt to readjust the belt.

These views bring us finally to the consideration of the claim that the right to have this question thus passed on was not fairly afforded to the appellant.

In his main charge, the learned justice presiding at the trial directed the jury: "But if you find that he (Brady) was the superintendent in charge of that room and exercising the powers of a superintendent over Gallagher and his fellow employee Gurdineer, and that this accident was the result of his negligence as superintendent * * * the master must respond in damages."

Further, in response to specific requests in behalf of appellant, the justice refused to charge that if the jury found the character of the act which Brady was doing at the time the intestate was hurt was a mere detail of the work, then it was an act of a fellow servant for which the defendant would not be liable, but did charge that even if the jury should believe that Brady was a superintendent, nevertheless he could not, by assuming to do the act of an employee in which there was no exercise of superintendence, create a liability against the defendant. While these instructions perhaps fairly outlined the legal principles to be observed by the jury, the latter still remained in uncertainty about the law governing the question which we have discussed. After they had retired they returned and submitted the following question: "Admitting that Brady was foreman, if he assisted the other two men in adjusting the belt, did that fact of itself put him on the basis of a laborer and relieve the defendant of responsibility for accident?" and to which the court answered: "If you reach the conclusion in this case that Brady was a foreman, exercising sole super-

intendence in that room, no one particular act could take away from him that authority out of which you could spell he was a common laborer; if you reach the conclusion that he was a foreman there in that room, he was a foreman for all purposes." And further in response to the appellant's request to charge "that if Brady was a foreman in that room and assumed to do the act of a laborer, or a servant in that room, he could not by doing so make liability for the master," the court said: "I refuse to change my charge. I charge you that if you conclude from the evidence in this case that Brady was a foreman exercising sole superintendence in that room, he remained so, no matter what he did in that room he was a foreman." In a very few minutes the jury returned with a verdict in favor of the plaintiff.

We do not think it is possible fairly to reconcile these final and most conspicuous directions with the rights secured to the appellant by the rules which we have laid down. We think that the jury were entitled to understand and, from their swift action in returning with a verdict against the appellant did understand, the learned justice to mean that Brady being a superintendent for general purposes was powerless to divest himself of that character, and that every act performed by him including of course the one which resulted in intestate's injury was an act performed by him as superintendent rather than as an ordinary co-worker, and for the negligent character of which the appellant was fully responsible.

These views lead us, without passing upon any other question, to the conclusion that the judgments of the courts below must be reversed and a new trial granted, costs to abide event.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, HAIGHT, WERNER and WILLARD BARTLETT, JJ., concur.

Judgments reversed, etc.