(142 App. Div. 465.)

SHAFF et al. v. UNITED SURETY CO. OF BALTIMORE, MD.

(Supreme. Court, Appellate Division, First Department.   January 20, 1911.)

PLEADING (§ 166*)—REPLY—NECESSITY—NEW MATTER IN ANSWER.

Appeal from Special Term, New York County.

Action by Louis M. Shaff and another against the United Surety Company of Baltimore, Md.  From an order of Special Term denying a motion to compel the plaintiffs to reply to the new matter contained in the defendant's answer, the defendant appeals.  Order reversed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

---

## MAKASKI v. UNION BAG & PAPER CO.

(Supreme Court, Appellate Division, Third Department.   January 4, 1911.)

Appeal from Trial Term.

Action by Joseph Makaski, as administrator, against the Union Bag & Paper Company.  From a judgment for plaintiff, and from an order denying a new trial, defendant appeals.   Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

Rockwood, McKnight & McKelvey (Nash Rockwood, of counsel), for appellant.

Irving W. Wiswall (E. T. Brackett and Benj. P. Wheat, of counsel), for respondent.

PER CURIAM.   Judgment and order affirmed, with costs.

HOUGHTON, J. (dissenting).   I concur in what Mr. Justice Cochrane said in his dissenting opinion on the former appeal of this case.   136 App. Div. 110, 120 N. Y. Supp. 517.   I do not think we should now permit the judgment in favor of plaintiff to stand.   The description of the place in which the deceased was working is fully set forth in the prevailing opinion on the former appeal.

The sole ground upon which the court submitted the question of defendant's negligence to the jury upon the present trial was whether it failed in its duty to the deceased in not disclosing to him that the flat platform upon which he was put to work did not run around the entire chip bin.   Whether the deceased could speak English or not, there is no proof that he could not see and understand what he saw. At the time defendant's foreman left him at work after shoveling out the chips, so that there was a flat surface upon which to stand, the chips were running, like grain in a hopper, from all sides toward the center.   The deceased could see them move, see that they were falling at an angle of practically 45 degrees, and there was nothing to induce him to believe that the flat place upon which he stood extended around the entire bin.   Even though he had any reason to believe that it did, he could see that it was covered by moving chips, and that those chips were moving on a slant toward the bottom of the pit.   No words of instruction which the defendant could have given would throw any more light on the situation than he himself could observe.   If the deceased was possessed of intelligence, as must be presumed, in the absence of proof that he was not, it was perfectly apparent to him that he ought not to step upon the moving mass of chips, which were falling toward the center of the bin.   The defendant cannot be said to have been negligent in not doing a useless thing.

Nor to my mind was there any sufficient proof that the deceased was not guilty of contributory negligence, and that he did not by his own carelessness bring the catastrophe upon himself.   If he had stood and continued his work where the defendant's foreman left him, no accident would have happened or could have happened.   In order that he should be precipitated to the center of the pit, he must have in some way changed his position.   If any proofs were before us, it might be that we could say such changing of position was not careless. But there is no proof whatever, except that the last time the deceased was seen he was standing in a perfectly safe place, and that to prosecute his work it was not necessary for him to change his position, and that he could not change it without some voluntary movement on his part.   The accident happened before the chips on which he was

standing began to move, and therefore there was no occasion for him to change his position. It is true that, where death ensues, slight proof of lack of contributory negligence only is necessary. But this very proper limitation of the rule does not abrogate the other rule that, where the facts disclosed as well show negligence as lack of it, the plaintiff is deemed to fail in his proof.

The principle involved in the present case is not at all like that enunciated in the leading cases of McHugh v. Manhattan Railway Company, 179 N. Y. 378, 72 N. E. 312, and Irish v. Union Bag & Paper Company, 103 App. Div. 45, 92 N. Y. Supp. 695, affirmed 183 N. Y. 508, 76 N. E. 1097. In those cases, while the employé was in the prosecution of his work, the master did some affirmative act which placed him in jeopardy. In the former case he was coupling cars, and the train was prematurely started. In the latter case the master maintained in close proximity to the place where the employé was at work, and which he might in the prosecution of his work accidentally touch, a pipe negligently charged with electricity sufficient to kill. No such facts appear in the present case. Nothing that the master did after the deceased was stationed at work added to his peril or brought about the injury, and no hidden danger existed.

But, if there were no legal questions involved in the case precluding recovery by the plaintiff, the verdict of the jury that the alleged deceased met his death as claimed to my mind is against the weight of evidence. It is true that his disappearance is mysterious, and that several teeth and part of what is said to be a human kneecap were found in the material coming from the digester tank. If the alleged deceased fell down the hopper and into the digester tank while in the discharge of his duty, he had the fork in his hand; and if his body went through the small opening, the fork would also, for the bin was too high above him for him to throw it out the top voluntarily or involuntarily. No one pretends that the acids of the digester were strong enough to eat up the tines of the fork. The opening from the digester to the cooling tank was twelve by fourteen inches. Assuming that the handle of the fork was eaten up by the digesting fluid, and that the tines of the fork went through this opening, they could pass no further than the cooling tank, for the liquid after it went into that place was pumped up to the riffle beds and screens. The size of the pipe of this pump does not appear in the record. But a pump must have valves, and whether it was large enough to take the tines of the fork into its suction pipe the tines surely never could go through the valve. The digester tank, riffles, and waste were all searched, and no tines of the fork were found. There was proof that the fork which the alleged deceased was using was found outside the tank, indicating one of two things—either that the deceased had quit his task and was getting out of the tank, and was not engaged in the work of the master when he fell in, or that, because the tines were not found in any part of the works, he did not fall in at all.

Very possibly it is a violent assumption to say that he ran away to leave his relatives to sue for his death; but the proofs which they

are able to submit in their action for damages are not satisfactory that he met his death in the line of his employment.

Upon all the grounds, therefore, I think the judgment should be reversed, and a new trial granted.

COCHRANE, J., concurs.