### KENNEDY v. NEW YORK TELEPHONE CO.

(Supreme Court, Appellate Division, First Department. May 22, 1908.)

1. MASTER AND SERVANT—INJURY TO SERVANT—SUFFICIENCY OF EVIDENCE—DUE CARE BY SERVANT.

Evidence *held* insufficient to show that a servant, injured by a fall from a ladder, was in the exercise of due care.

2. SAME—CONTRIBUTORY NEGLIGENCE OF SERVANT.

Employer's Liability Act, Laws 1902, p. 1748, c. 600, does not relieve the employé injured from proper care, but expressly provides that an action under it may only be maintained where the employé injured was himself in the exercise of due care.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 670.]

3. SAME—ACTIONS—CONDITIONS PRECEDENT—NOTICE OF INJURY—SUFFICIENCY.

A notice of injury to an employé, resulting in his death, that it was "due to your negligence in not providing him with a safe and proper place to work in and your negligence in omitting to furnish safe and suitable appliances and implements with which to perform his work," is not a sufficient statement of the cause of the injury to satisfy Employer's Liability Act, Laws 1902, p. 1748, c. 600.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 806.]

4. SAME—"FELLOW SERVANTS"—WHO ARE.

A superintendent and painter employed under him are "fellow servants" at common law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 486-492.

For other definitions, see Words and Phrases, vol. 3, pp. 2716, 2730; vol. 8, p. 7662.]

5. SAME—ASSUMPTION OF RISK.

Where, on complaint by a painter to his superintendent that a ladder was not in good repair, he was directed to use it, he assumed the risk of using the ladder at common law, since he knew its condition as well as his employer.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 574-600.]

Appeal from Trial Term, New York County.

Action by Michael Kennedy, as administrator of the estate of Thomas J. Kennedy, deceased, against the New York Telephone Company. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Reversed, and a new trial granted.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Theron G. Strong, for appellant.
Julius M. Mayer, for respondent.

HOUGHTON, J. The plaintiff's intestate was employed by the defendant as a painter in a building under construction by it. Shortly before the accident resulting in his death, he and a companion were directed by the foreman of defendant to find a stepladder for use in painting a hallway. Several ladders were furnished by defendant, but all were in use except two, which appear to have been laid aside. The deceased selected the better one, and showed it to the superintendent, and complained to him that it was not in good repair, but was directed by the superintendent to use it. The ladder was an ordinary stepladder about 5½ feet high, and the legs or braces were held by ropes, instead of iron rods or side pieces. The deceased placed it in position for use on the marble tiling floor of the hallway, pushing out the legs until the ropes were taut, and proceeded to the top with his paint bucket and brush. His companion worker was standing on the floor and painting near him, and not far from the back or brace end of the ladder. The last that this companion or any one saw of the deceased was when he mounted to the extreme top of the ladder and dipped his brush in his bucket and reached up and out to paint the ceiling or upper part of the side wall. He testifies that the next thing he knew the ladder was collapsing and pitching towards him, and that it and the deceased fell upon him; the deceased striking his head, inflicting injuries from which he shortly died.

The theory of the plaintiff is that the ladder furnished by defendant was unsafe, and that its legs were fastened by ropes, instead of an iron rod or brace, to hold them and prevent collapsing. There was proof that stepladders of this description were usually provided with rods or braces, and there is some proof that the ladder in question originally had them, but upon their being broken or torn off ropes were substituted. The ladder was produced in court, and certain illustrations and experiments made with it during the progress of the trial. It was conceded that, as long as the legs remained sufficiently extended to straighten the ropes, the ladder was as safe as it would have been had iron rods or braces been used in their place. Nothing was broken in any way about the ladder after the accident. The plaintiff contends that the proofs bear out the theory that, as the defendant stood on the top of the ladder reaching forward to do his work, he threw the center of gravity on the legs and dragged the step part forward on the smooth tiling of the floor, causing the ladder to pitch forward over the legs, and that this could not have happened if rods or iron braces had been used at the sides, instead of ropes, because the rods would have prevented the ladder from shutting.

The action is in form under Employer's Liability Act, Laws 1902, p. 1748, c. 600, and if it be conceded that the notice given was sufficient to bring it within the provisions of the act, and thereby charge the defendant with any negligence of its superintendent in directing or per-

mitting the deceased to use a ladder which may have been defective, still we are of the opinion that the plaintiff failed to prove that the accident was caused without negligence on the part of the decedent, and the judgment must be reversed, because the verdict of the jury in that regard was against the weight of the evidence. The deceased must have known, from his experience of 16 years as a painter, that the ladder he was using would fall in some direction if he did not maintain his proper balance, or if he attempted to reach too far, or did not stand with proper steadiness. The ladder was an ordinary one, of no great height, and could be used with perfect safety with proper care. Ordinarily it would tip sideways if one standing on top of it lost his balance; but failure to maintain proper equilibrium might also have precipitated the ladder in the direction and in the manner testified to. It was as much an act of his own that he drew the steps of the ladder towards the legs as it would have been had he tipped it sideways. There being no proof as to the care which he exercised, the circumstances shown are not sufficient to permit the inference that he used proper care.

The principle invoked in Irish v. Union Bag & Paper Co., 103 App. Div. 45, 92 N. Y. Supp. 695, affirmed 183 N. Y. 508, 76 N. E. 1097, and in McHugh v. Manhattan Railway Co., 179 N. Y. 378, 72 N. E. 312, is not applicable. In the former case the deceased was put at work near a pipe which, unknown to him, was negligently charged with electricity. In the latter case the deceased entered between cars to couple them, and the evidence warranted the conclusion by the jury that the train was negligently started after he had made the coupling and before he could emerge from his perilous position. While it is true that in cases of death less evidence of lack of care is required than where the person injured is able to testify, still, in all cases where it is assumed there was sufficient care on the part of the deceased, the circumstances disclosed tended to show that an inherently dangerous situation existed, from which it was a fair inference to assume either that the deceased had no knowledge of it, or that he probably did what he could to extricate himself and prevent injury. In the present case this principle does not apply, for manifestly in some unexplained way the deceased must, so far as the evidence disclosed, have tipped the ladder himself and brought about his own fall. The employer's liability act does not relieve the person injured from proper care, because it expressly provides that an action under its provisions may only be maintained when the person who is injured is himself in the exercise of due care and diligence at the time. Employer's Liability Act, Laws 1902, p. 1748, c. 600.

But the notice which the plaintiff served was not sufficient to permit him to bring the action under the provisions of that act. The time and place are accurately stated, but the cause of injury is described as "due to your negligence in not providing him with a safe and proper place to work in, and your negligence in omitting to furnish safe and proper appliances and implements with which to perform his work." This general language, in our opinion, does not constitute a good notice. It is no notice at all of the cause of the accident. A general statement that an accident was caused by defendant's negligence in failing to fur-

nish a safe place to work and suitable tools and appliances is not a sufficient statement of the cause of the injury to satisfy the statute. Finnigan v. New York Contracting Co., 122 App. Div. 712, 107 N. Y. Supp. 855; Ortolano v. Degnon Contracting Co., 120 App. Div. 59, 104 N. Y. Supp. 1064; Miller v. Solvay Process Co., 109 App. Div. 135, 95 N. Y. Supp. 1020; Dalton v. Salem, 131 Mass. 551. While a notice need not state the cause of the defective condition complained of, it should state what caused the injury and how the accident happened in such a way that the employer may be apprised of what took place and thus be enabled to make an intelligent investigation. Barry v. Derby Desk Co., 121 App. Div. 810, 106 N. Y. Supp. 575; Whitman v. Groveland, 131 Mass. 553. The notice which the plaintiff served not being sufficient to bring the action within the provisions of the employer's liability act, no cause of action at common law was proved, for the assumption of risk and negligence of the superintendent, if any there was, would be eliminated. The superintendent was a co-servant under the common-law rule, and the deceased assumed the risk of using the ladder, even if it was defective, for he knew its condition as well as the defendant.

The judgment and order must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.