### HURLEY v. OLCOTT et al.

(Supreme Court, Appellate Division, Second Department. November 19, 1909.)

1. MASTER AND SERVANT (§ 252*)—INJURY TO SERVANT—NOTICE OF TIME, PLACE, AND CAUSE.

    The purpose of the statute (Laws 1902, p. 1749, c. 600, § 2), providing that no action for injury or death under the act shall be maintained unless notice of the time, place, and cause of the injury is given to the employer within 120 days, and the action commenced within a year, after the accident, is to notify the employer of the occurrence, that he may investigate it while it is still fresh.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 806; Dec. Dig. § 252.*]

2. MASTER AND SERVANT (§ 252*)—INJURY TO SERVANT—NOTICE OF TIME, PLACE, AND CAUSE—SUFFICIENCY.

    A notice that on July 9th, at 4:35 p. m., while under a master's employment on a certain building, two steel columns were placed in a careless position on a temporary bridge two feet above the fourteenth floor, seventeenth tier, and the top one rolled off, or was pushed off, onto the servant's leg, breaking it four inches above the knee, was sufficient notice of the time, place, and cause of the injury, as well as of the cause of the accident, if that be necessary.

    [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 252.*]

3. MASTER AND SERVANT (§ 252*)—INJURY TO SERVANT—NOTICE OF TIME, PLACE, AND CAUSE—SUFFICIENCY OF SERVICE.

    Under the statute (Laws 1902, p. 1749, c. 600, § 2), providing that the notice of the time, place, and cause of injury to a servant may be served by post, by letter addressed to the person on whom it is to be served at his last-known place of residence or of business, and, if served by post, shall be deemed to have been served at a time when the letter containing it would be delivered in the ordinary course of the post, service by mail is good, though the letter be not actually received.

    [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 252.*]

4. MASTER AND SERVANT (§ 182*)—"PERSON INTRUSTED WITH AND EXERCISING SUPERINTENDENCE."

    Iron workers employed on a building were divided into gangs, under the charge of a foreman, called a "pusher." There was a general superintendent of the whole work, and in his absence the pusher had direction of the men, and of a derrick with which they worked; and, if the men needed help, he assisted with his hands, if he saw fit. Held, that the pusher was a "person intrusted with and exercising superintendence," whose sole or principal duty is that of superintendence, for whose negligence the master is made responsible, regardless of the absence of the general superintendent; the statute (Laws 1902, p. 1750, c. 600, § 3) not

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

requiring that the person shall be a general superintendent, or that he shall have power to employ or discharge men.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 371, 372; Dec. Dig. § 182.*

For other definitions, see Words and Phrases, vol. 7. pp. 6792–6793.]

5. MASTER AND SERVANT (§ 204*)—ASSUMPTION OF RISK—"NECESSARY RISK"—"OBVIOUS RISK."

The statute (Laws 1902, p. 1750, c. 600, § 3), providing that an employé, by entering upon or continuing in the employer's service, shall be presumed to have assented to the necessary risks of the employment, such necessary risks including those inherent in the nature of the business, after the employer has exercised due care for the safety of his employés, and complied with the laws regulating such business, distinguishes between "necessary risk" and "obvious risk," which latter may be due to the master's failure to perform his duty.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 538, 544–546; Dec. Dig. § 204.*

For other definitions, see Words and Phrases, vol. 6, p. 4896.]

6. MASTER AND SERVANT (§ 295*)—INJURY TO SERVANT—INSTRUCTIONS.

In an action for injury to a servant, who was an iron worker, from the falling of iron columns which had been piled on each other, where defendant's contention was that the accident was unexplained, and was one of those occurrences which sometimes happen in that kind of work, and one of the inherent risks of the business, a charge that, when a servant assumes the risk of his work, he assumes it relying upon the fact that the master will do his duty, and that it is after the master has done his duty that the servant assumes the risk, and that if the cause of the injury was one of the ordinary risks of the work, which the master's negligence did not contribute to, the master would not be liable, was proper.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1168–1179; Dec. Dig. § 295.*]

7. MASTER AND SERVANT (§ 288*)—ASSUMPTION OF RISK—QUESTION OF FACT.

Whether a servant fully understood the dangers of the work as it was prosecuted, and by continuing in the service assented thereto, is a question for the jury under the statute (Laws 1902, p. 1750, c. 600, § 3).

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

8. APPEAL AND ERROR (§ 273*)—EXCEPTIONS IN LOWER COURT—SUFFICIENCY.

An exception to the court's failure to charge fully on the phase of the case should show wherein he failed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1620, 1621; Dec. Dig. § 273;* Trial, Cent. Dig. §§ 689, 690, 694–696.]

9. TRIAL (§ 256*)—INSTRUCTIONS—INSUFFICIENCY.

Where the court fails to charge fully on a phase of the case, counsel should either call the court's attention to the fact, or make a proper request to charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

10. MASTER AND SERVANT (§ 219*)—ASSUMPTION OF RISK—NECESSARY RISKS.

While a servant only assumes the necessary risks after the master has performed his duty, the rule does not apply to obvious risks.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 610–624; Dec. Dig. § 219.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

11. TRIAL (§ 295*)—INSTRUCTIONS—CONSTRUCTION AS A WHOLE.

Sentences extracted from a charge and disassociated from their context cannot be made the basis of reversal.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 703–717; Dec. Dig. § 295.*]

Appeal from Trial Term, Westchester County.

Action by Thomas F. Hurley against J. Van V. Olcott and others, receivers and trustees of Milliken Bros., Incorporated. From a judgment for plaintiff, and an order denying a new trial, defendants appeal. Affirmed.

The plaintiff, an experienced iron worker, was employed in a gang of six men in charge of one Fiske, lifting iron columns with a derrick from the street to the fourteenth story of a building in process of erection, and placing them on skids. The columns weighed from four to seven tons each. They were lifted two at a time, and were placed as they came, one on top of the other, near the foot of the derrick mast. While the plaintiff was unfastening the lugs from columns which had been placed on the skid, as he was directed to do by Fiske, the top column fell upon him, causing the injuries complained of. The plaintiff's theory is that the boom line broke, allowing the boom to swing, and that the butt of it hit the column and knocked it over. The defendants' theory is that the boom could not have hit the column, that the boom line did not break, and that the column fell over from some unexplained cause. The plaintiff's evidence is that the boom line was an old, worn, ¾-inch rope, which had already broken three times, and had been spliced or tied by the direction of Fiske; that it was customary to use a 1¼-inch boom line on such a derrick; that the ¾-inch line was insufficient, especially at a height of 14 stories, where the wind pressure increases the strain; and that there was no 1¼-inch rope on the job which could have been used. The evidence tends to show that the derrick was not plumb, wherefore the boom had a tendency to ride or crowd to one side. It was provided with a boom stick, which, if rigged with lines and falls, could have been used to control it. The evidence tends to show that the boom stick was split, that it had been out of use for a week prior to the accident, that it was not rigged with lines and falls, and that the boom was controlled solely by the boom line before mentioned.

Fiske directed the men where and how to place the columns. There was a general superintendent, one Craig, in charge of the work. The workmen were divided into gangs of a few men in each, under the immediate charge of a foreman, or, as he was called, a "pusher." Fiske was the foreman, or pusher. His duty, as described by Craig, was to get the work done "as fast and in as proper a way as possible." In the absence of Craig, he had the direction of the derrick and of the men; and, if the men needed help, he assisted with his hands, if he saw fit to do so. Craig was not present at the time of the accident. The accident happened on September 9, 1907. The plaintiff's wife testified that on September 18th, by the plaintiff's direction, she wrote and mailed to the defendants the following letter:

"New York, Sept. 18th, 1907.

"Milliken Bros., or Receivers of Milliken Bros.—Dear Sirs: I wish to inform you that my husband, Thomas F. Hurley, was sent to the Presbyterian Hospital yesterday with an ununited fracture of the left femur. On the 9th of July, 4:35 p. m., while under your employ on the new Singer B'ldg, two steel columns were placed in a careless position on the temporary bridge two feet above the 14th floor, 17th tier. These columns were placed one on top of the other. The top one rolled or was pushed off onto his leg, and broke the leg four inches above the knee.

"Yours very truly,          Werra Hurley.

"221 East 45th St., New York City."

The defendants' evidence tended to show that that letter was never received by it. The court charged the jury, inter alia, as follows: "You have been

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

told again and again that, when a man assumes the risk of his work, he assumes it believing and relying upon the fact that the master will do his duty, that the master will not be careless, because when a man asumes the risk of a dangerous thing he does not assume, in addition to that, the carelessness of his employer. It is only after the master has done his duty that the man assumes the risk. If you find this was one of the ordinary risks of the work, to which the master's negligence did not contribute, then the master is not liable." At the close of the charge the defendants' counsel took an exception in the following words: "I except to your honor's charge as to the assumption of risk. Your honor says that the plaintiff does not assume any risk, except where the defendants have already done their duty. I think the plaintiff must assume the risk where the defendant is negligent as well." To which the court replied: "If the risks are manifest when he goes to work."

At the time of the accident the plaintiff was 27 years of age. He earned 56¼ cents an hour, and from $30 to $50 a week. He sustained a fracture of the left femur. It united only by a fibrous union, thus forming a false joint, permitting only a limited and unnatural motion of the leg, and creating a condition which will grow progressively worse, probably necessitating amputation. The court submitted to the jury the question whether the master was negligent for not furnishing a different rope for the boom line, and whether Fiske was a superintendent, and, if so, was negligent in directing the columns to be placed one above the other near the base of the mast. The jury rendered a verdict of $25,000.

Argued before HIRSCHBERG, P. J., and JENKS, BURR, RICH, and MILLER, JJ.

Eugene Lamb Richards, Jr. (Rutherford B. Meyer, on the brief), for appellants.

Thomas J. O'Neill (John J. Welsh, on the brief), for respondent.

MILLER, J. I entertain some doubt whether the notice referred to in the foregoing statement of facts was ever mailed to the defendants; but none of the reasons urged against the judgment appear to me sufficient to justify reversal. I shall consider them in order.

1. The notice was sufficient "notice of the time, place, and cause of the injury." It is not disputed that time and place were correctly stated, and there can be little more doubt that the cause of the injury was accurately stated. The plaintiff's leg was broken by an iron column falling upon it. The "cause of the injury" was the fall of the column upon the leg. The notice stated that the columns were placed one on top of the other, and that the top one rolled or was pushed off onto the plaintiff's leg, breaking it. That was a definite and precise statement of the cause of the injury. The cause of the injury, and the cause, the negligent act resulting in the occurrence, of the accident, are not the same; and the statute plainly distinguishes between the two. The language is:

"No action for recovery of compensation for injury or death under this act shall be maintained unless *notice of the time, place and cause of the injury* is given to the employer within one hundred and twenty days and the action is commenced within one year after *the occurrence of the accident causing the injury or death.*" Laws 1902, p. 1749, c. 600, § 2. (Italics are mine.)

The purpose of the statute is to notify the employer of the occurrence of the happening, that he may investigate it while it is still fresh. This conclusion is supported by the decisions of this court. Kennedy v. N. Y. Telephone Co., 125 App. Div. 846, 110 N. Y. Supp. 887; Lobasco v. Moxie Nerve Food Co., 127 App. Div. 677, 111 N.

Y. Supp. 1007; Palmieri v. Pearson & Son, 128 App. Div. 231, 112 N. Y. Supp. 684, and cases cited. The case of Finnigan v. N. Y. Contracting Co., 194 N. Y. 244, 87 N. E. 424, 21 L. R. A. (N. S.) 233, relied upon by the appellants, does not decide the contrary. The notice in that case was not, like this, a definite and precise statement of the cause of the injury, but, instead, a general statement of practically every ground of negligence of a master known to the law.

But, if it be necessary to state the cause of the accident, as well as the cause of the injury, this notice is good; for it states that the two steel columns were placed in a careless position, one on top of the other. The negligence of the superintendent, relied upon, was his direction that the columns be thus placed near the foot of the mast, in view of the fact that the boom was controlled only by a $\frac{3}{4}$-inch rope, old and worn, and that the derrick was out of plumb. Surely the notice, which the statute contemplates may be served by an ordinary workman, does not have to be a complaint, must less a bill of particulars.

2. The statute provides:

"The notice may be served by post by letter addressed to the person on whom it is to be served, at his last known place of residence or place of business, and if served by post shall be deemed to have been served at the time when the letter containing the same would be delivered in the ordinary course of the post." Laws 1902, p. 1749, c. 600, § 2.

In view of the plain language of the statute, I do not think it is arguable that service by mail is not good, unless the letter is actually received by the defendant. The fact that the letter was never received by the defendant, if that be the fact, might furnish a cogent reason for thinking that it was never sent; but upon the evidence that question was for the jury, and their finding has not been challenged.

3. It was not error to submit the question to the jury whether Fiske was acting as superintendent in the absence of Craig. I think that the evidence justifies the finding that Fiske was a person "intrusted with and exercising superintendence, whose sole or principal duty is that of superintendence," regardless of the absence of Craig. The appellants rely upon Abrahamson v. General Supply & Construction Co., 112 App. Div. 318, 98 N. Y. Supp. 596. In that case, as here, the person whose negligence was relied upon by the plaintiff as furnishing ground for recovery was a "pusher" in charge of a gang of iron workers; but it appeared in that case that the "pusher" was employed to do, and was engaged in, manual labor the same as the others. His principal duty was manual labor. His leadership or superintendence was but incidental. In this case, the evidence of the defendants shows that Fiske was employed to direct the men. That was his sole and principal duty. The mere fact that of his own volition he occasionally lent a hand to hasten the work does not change the case. Prendible v. Conn. River Manuf. Co., 160 Mass. 131, 35 N. E. 675; Crowley v. Cutting, 165 Mass. 436, 43 N. E. 197; Reynolds v. Barnard, 168 Mass. 226, 46 N. E. 703. Fiske was intrusted with and exercising superintendence as plainly as was Norris, in Faith v. N. Y. C. & H. R. R. R. Co., 109 App. Div. 222, 95 N. Y. Supp. 774, affirmed 185 N. Y. 556, 77 N. E. 1186, or Sapp, in Carlson v. United Engineer-

ing & Contracting Co., 113 App. Div. 371, 98 N. Y. Supp. 1036, or Illman, in Mikos v. N. Y. C. & H. R. R. R. Co., 118 App. Div. 536, 102 N. Y. Supp. 995.

The statute does not require that the person for whose negligence the master is made responsible shall be a general superintendent, but only that he shall be a person "intrusted with and exercising superintendence, whose sole or principal duty is that of superintendence." No matter how limited his authority may be, if he comes within that definition, the master is liable for his negligence. The draughtsman of that statute understood that a superintendent, or one exercising superintendence, might have general or limited authority; for by section 3 the employé is required to give information of defects known to him to the employer, or to some person intrusted with "some general superintendence." According to the common, ordinary acceptance of the word "superintendance," it imports little more than oversight and direction, and such is the meaning of the term according to the lexicographers. Fiske was employed to exercise oversight, to take charge of a particular part of the work, and to direct how it should be done. It was not necessary that he should have the power to employ or discharge men, though, according to his testimony, he did employ the plaintiff. His act in directing where and how the columns should be placed was an act of superintendence, and his duties were those of superintendence. McHugh v. Manhattan R. Co., 179 N. Y. 378, 72 N. E. 312. The mere fact that there was a general superintendent over all does not affect the question. McBride v. N. Y. Tunnel Co., 101 App. Div. 448, 92 N. Y. Supp. 282; Carlson v. United Engineering & Contracting Co., supra.

4. I do not think the exception to the charge respecting the assumption of risk sufficient to present the point argued by the appellants. It is obvious, from the portion of the charge quoted in the above statement of facts and from its context, that the court had reference to the inherent, necessary risks which the servant is conclusively presumed to have assumed. The language of the statute on that subject is:

"An employé by entering upon or continuing in the service of the employer shall be presumed to have assented to the necessary risks of the occupation or employment and no others. The necessary risks of the occupation or employment shall, in all cases arising after this act takes effect be considered as including those risks, and those only, inherent in the nature of the business which remain after the employer has exercised due care in providing for the safety of his employés, and has complied with the laws affecting or regulating such business or occupation for the greater safety of such employés." Laws. 1902, p. 1750, c. 600, § 3.

There is a plain distinction between necessary risks, i. e., those risks arising after the master has performed his duty, and obvious risks, i. e., those which may be due to the master's failure to perform his duty. It may be that some confusion of thought has resulted from not carefully distinguishing between the two kinds of risks, and that it were better to omit any reference to the assumption of necessary risk, because the master owes no duty to protect the servant from such risks, and negligence cannot be based on a failure to furnish such protection. But the doctrine of assumption of risk has been placed on the ground of contract, and it seems more scientific to say that the

servant contracts to. assume the necessary risks, i. e., those within the contemplation of the. parties when the contract of hiring is made, than it does to say that he contracts to assume obvious risks, i. e., those arising from the master's negligence, which he knows nothing about when entering into the contract.

But it is profitless now to discuss the point whether the doctrine of the assumption of obvious risks should have been founded on contract or on the maxim "Volenti non fit injuria." It is enough for our present purpose that the statute makes a distinction between the two classes of risks. The charge in question was germane. The defendants' contention was that the accident was unexplained, that it was one of those occurrences which sometimes happen in the doing of that kind of work, and was one of the inherent, necessary risks of the business. The charge excepted to, as it was plainly intended by the learned judge, and as it must have been understood by the jury, was to the effect that if the accident happened from some unexplained cause, and not because the boom swung over and hit the column, as claimed by the plaintiff, there could be no recovery. Instead of being unfavorable, it was favorable, to the defendants.

The court was not requested to, and did not, charge respecting the assumption of obvious risks, further than to. reply to counsel's statement, to the effect that the plaintiff must assume the risks where the defendant is negligent, by saying, "If the risks are manifest when he goes to work." No exception was taken to that statement, and no request was made for a further charge. The evidence shows that the plaintiff was an experienced workman, that he had observed the rope used for the boom line and knew of its being broken, and that the practice of piling the columns one above the other had been continued for some time to his knowledge. It does not appear that he knew that the derrick was out of plumb. However, a jury might well have found that the plaintiff fully understood and appreciated the dangers of the work as it was prosecuted, and that by continuing in the service he assented thereto. But under the statute that question had to be submitted to the jury. Clark v. N. Y. C. & H. R. R. R. Co., 191 N. Y. 416, 84 N. E. 397.

It was doubtless an oversight on the part of the learned trial judge that he did not charge the jury fully on that subject; but an exception to his failure to do so should point to such failure. Counsel should either have called the judge's attention to the fact that he had not charged on that question, or have made an appropriate request to charge. "Doubt as to the application of an exception defeats it." Clark v. N. Y. C. & H. R. R. R. Co., supra. Technically it is not correct to say that the servant only assumes the risks arising after the master, has performed his duty; for, while that is correct as applied to the necessary risks, it is obviously misleading when applied to obvious risks, both of which the servant is held to assume on the ground of implied contract. Dowd v. N. Y., O. & W. R. Co., 170 N. Y. 459, 63 N. E. 541. But the trial judge was talking about necessary risks. What he said on that subject was justified, both by the statute and by decisions so numerous that it would be profitless to cite them. Sentences extracted from a charge and disassociated from their con-

text cannot be made the basis of reversal. The charge excepted to, construed with reference to what it referred to, was correct. In response to the statement of counsel, the judge said that the servant assumes the risks which are manifest when he goes to work. If the defendants were not satisfied with that statement, they should have requested a fuller explanation. If the law respecting the assumption of obvious risks had plainly been explained to the jury with reference to the facts in the case, they might have found that the plaintiff voluntarily continued in the service, with full knowledge of the dangers to which he was subjected; and we might—I am far from suggesting that we should—have thought that a finding for the plaintiff on that question was against the weight of the evidence. But no exception plainly presenting the question is found in the record, and the only complaint on the facts is that the verdict is excessive.

In view of the age of the plaintiff, his earning capacity, and the very serious injury plainly due to the accident, we cannot say that the verdict was too large.

The judgment is affirmed.

Judgment and order affirmed, with costs. All concur.