RODZBORSKI v. AMERICAN SUGAR REFINING CO. OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.   June 7, 1912.)

1. MASTER AND SERVANT (§ 279*)—INJURY TO EMPLOYÉ—SUFFICIENCY OF EVIDENCE.

In an employé's action for injuries from the sudden starting of a coal conveyor belt which he was cleaning, evidence *held* to sustain a finding that the superintendent in charge of the plaintiff and the belt at the time of the accident was negligent in sending plaintiff to clean the belt without adopting adequate measures to prevent its sudden starting.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 973–975, 978–980; Dec. Dig. § 279.*]

2. APPEAL AND ERROR (§ 1053*)—HARMLESS ERROR—EVIDENCE.

In an employé's action for injuries, a witness' answer to a question asked by plaintiff's attorney which disclosed, though the question did not call for it, that the defendant was protected by accident insurance, was not ground for reversal, where every proper precaution was immediately taken to nullify any harmful effect it might have, especially where the same matter had already been brought to the attention of the jury during an examination of the same witness by the defendant's attorney.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4178–4184; Dec. Dig. § 1053.*]

3. MASTER AND SERVANT (§ 284*)—INJURY TO EMPLOYÉ—NOTICE—JURY QUESTION.

Under conflicting evidence in an employé's action for injuries, the question of whether a notice of injuries had been delivered to the employer was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1000–1132; Dec. Dig. § 284.*]

4. MASTER AND SERVANT (§ 252*)—INJURY TO EMPLOYÉ—NOTICE—SUFFICIENCY.

A notice in the form of a letter, stating that the employé had been injured on a certain date while in the employer's employ in its boiler room in a certain place by having his right arm caught on a belt which he was cleaning, was sufficient to comply with the requirements of Employer's Liability Act, § 201, that notice of the time, place, and cause of the accident shall be given to the employer, though it did not state any defect in the belt or machinery, specify negligence, or express an intention to sue; the purpose of the required notice being to inform the employer of the occurrence that he may intelligently investigate the accident, and it not being necessary for it to be drawn with the particularity of a pleading.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 806; Dec. Dig. § 252.*]

5. MASTER AND SERVANT (§ 252*)—INJURY TO EMPLOYÉ—SUFFICIENCY OF NOTICE—SIGNING.

Where the body of an employé's notice of his injury contained the employé's name, written therein at his request, it was sufficient, though not subscribed, to comply with the requirements of Employer's Liability Act, § 201, that the notice shall be signed by the person injured or some one in his behalf.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 806; Dec. Dig. § 252.*]

Jenks, P. J., and Carr, J., dissenting.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Kings County.

Action by John Rodzborski against the American Sugar Refining Company of New York. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Affirmed.

See, also, 130 App. Div. 886, 114 N. Y. Supp. 1144; 132 App. Div. 899, 116 N. Y. Supp. 1146.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, CARR, and RICH, JJ.

B. L. Pettigrew, of New York City, for appellant.
F. W. Sparks, of Brooklyn, for respondent.

HIRSCHBERG, J. The plaintiff was seriously injured while cleaning snow and ice from a belt used as a coal conveyor in the defendant's factory. This belt was about 25 inches wide and ran in a horizontal position over wheels at either end operated by a shaft and gearing, connected with a motor by a small belt running vertically. It was situated in a dark room at the top of defendant's factory and seems to have been motionless when the plaintiff was directed to clean the accumulations of snow and ice from it. Whether the motor was running at that time, and whether the belt could have been motionless, owing to the snow and ice, while the motor was running, were subjects of dispute during the trial. The belt started while the plaintiff was cleaning it, and his right arm was caught and injured between the belt and one of the wheels. He has recovered a judgment under the Employer's Liability Act, and the defendant has appealed therefrom, and from the order denying its motion for a new trial made upon the minutes.

[1] The learned trial justice submitted the case to the jury to determine whether the defendant's superintendent, one Herman Ballder, sent the plaintiff to the belt to remove the snow and ice without having taken reasonable precautions to see that the machinery was so circumscribed and controlled as not to be likely to be set in motion while the plaintiff was cleaning the belt. Ballder, who was concededly the superintendent in charge of the plaintiff and the belt at the time of the accident, denies that he sent the plaintiff to clean the belt, and claims that he sent one of the plaintiff's fellow employés named August Miller to do that work. The plaintiff evidently is an uneducated foreigner, and his testimony was somewhat contradictory. He did testify, however, that Ballder sent him to clean the belt and remained present until the time of the accident. The plaintiff's witness Serbatzki testified that, when the plaintiff was sent to clean the belt, the motor was going, and the belt was stationary, and that after the accident he released the plaintiff's arm from the machinery, and noticed that at that time the motor was still going. Upon the entire case, I think that there was sufficient evidence to sustain a finding that the superintendent was negligent in sending the plaintiff, who was shown to be unfamiliar with the work, to clean the belt, without adopting adequate measures to prevent the starting of the belt.

[2] The appellant, however, presents certain objections for consideration. The first is that during the trial the plaintiff's attorney im-

properly disclosed the fact that the defendant was protected by accident insurance. One of the plaintiff's witnesses, upon being recalled by the plaintiff, testified on direct examination that some time after the accident he went on behalf of the plaintiff to see the defendant's cashier, a Mr. Bendernagel, and was then asked by the plaintiff's attorney what direction Mr. Bendernagel gave him with regard to the accident. The witness made this answer:

"When I came there with Mr. Rodzborski, I asked him was this man here with a letter, and he said he was here, and I said, 'What do you intend to do about it?' and he said, 'Nothing; we hold insurance, and you have to see the insurance,' and I said, 'Who is the insurance?' and he said, 'Employer's Liability.' I said, 'Where are they located?' And he said, '56 Maiden Lane,' and then I said, 'I think I can locate it,' and I bid him good morning and left."

The defendant's counsel moved to withdraw a juror, and excepted to the court's denial of that motion. The effect of such testimony has been before the courts frequently, and as testimony it has been held to be improper under any circumstances. See Simpson v. Foundation Co., 201 N. Y. 479, 490, 95 N. E. 10; Hordern v. Salvation Army, 124 App. Div. 674, 676, 109 N. Y. Supp. 131; Haigh v. Edelmeyer & Morgan Hod Elevator Co., 123 App. Div. 376, 380, 107 N. Y. Supp. 936, and Manigold v. Black River Traction Co., 81 App. Div. 381, 80 N. Y. Supp. 861. It is not every reference, however, to the matter of accident insurance that necessitates a reversal, and especially where the reference is made by the defendant itself, as a reason for not considering or investigating the claim when presented. The judgment should not be reversed unless the appellate court is satisfied that the verdict of the jury has been or may have been influenced by the improper testimony. In Cosselmon v. Dunfee, 172 N. Y. 507, 65 N. E. 494, the plaintiff's counsel asked a witness if he knew whether the defendants had insurance against accident to their employés. The question was excluded, and a judgment for the plaintiff was affirmed by the Appellate Division and by the Court of Appeals. In the case at bar, the question asked did not necessarily lead to the objectionable matter, and the counsel for the plaintiff joined with the counsel for the defendant and the court in disclaiming the importance of the answer. Moreover, the matter of accident insurance was first referred to by defendant's counsel while examining the same witness. Prior to the objectionable answer, the defendant's counsel, after having asked the witness how much time he had spent on the case, and after having received the answer that the witness had spent one day at the Sugar Refining Company and another day to speak to the insurance people, asked this question:

"When you went down to the American Sugar Company and to the insurance company, did you leave the business there?"

Various other references to the insurance company, made in answer to questions put by the defendant's counsel, before the answer objected to, were allowed without question. Upon the entire case I do not think that the appellant is in a position to criticise the answer made to the question put by the counsel for the plaintiff; nor am I

of the opinion that that answer has in any way tended to prejudice or improperly influence the jury. Any knowledge regarding the matter of insurance was conveyed to them during the examination of the witness by the defendant's attorney before the giving of the objectionable answer, and when that answer was given every proper precaution was immediately taken to nullify any harmful effect that it might be supposed to have had.

[3, 4] The appellant also contends that the notice given on behalf of the plaintiff was not sufficient to comply with the provisions of the Employer's Liability Act. On the trial the plaintiff gave secondary evidence of the contents of the notice, by the testimony of one William Laboda. The gist of such testimony is that, after the accident and within the statutory period prescribed for the giving of the notice, the witness wrote a letter to the defendant at the plaintiff's request, stating that the plaintiff had been injured on the 5th day of February, 1907, while in the defendant's employ in its boiler room between South Third and South First streets by having his right arm caught on a belt which he was cleaning. The plaintiff testified that he delivered that letter within the statutory period at the defendant's office on South Fourth street. The defendant claims that it never received the letter. The question whether the letter was delivered was for the jury. It is not claimed that the letter stated any defect in the belt or machinery; what person, if any, charged with the duty of superintendence had been negligent; or an intention to sue. The statute specifically requires only notice of the time, place, and cause of the accident, signed by the person injured or by some one in his behalf. Laws 1909, c. 36 (Consol. Laws 1909, c. 31) § 201. The purpose of the notice is to inform the employer of the occurrence, that he may intelligently investigate the accident (Hurley v. Olcott, 134 App. Div. 631, 635, 119 N. Y. Supp. 430), and it need not be drawn with the accuracy or particularity of a pleading (Dippolito v. Brown, 148 App. Div. 116, 131 N. Y. Supp. 1021). Assuming the truth of the story told by the plaintiff's witness, the time, the place, and the cause of the accident would seem to have been stated with sufficient particularity and accuracy to enable the employer to conduct an intelligent investigation of the occurrence. In Matrusciello v. Milliken Brothers, Inc., 129 App. Div. 661, 114 N. Y. Supp. 223, the notice stated that the plaintiff had been injured while in the defendant's employ working in connection with its "contracting operation at Mariners Harbor, Staten Island, New York," and in Young v. Bradley & Son, 129 App. Div. 678, 114 N. Y. Supp. 264, that the plaintiff sustained injuries while in the defendant's employ at its "factory on Vernon avenue, Long Island City"; and this court held that each of these notices stated the place of the accident with sufficient particularity. So, too, the First Department, in English v. Milliken Brothers, Inc., 132 App. Div. 501, 118 N. Y. Supp. 31, sustained a notice stating that the place of the accident was a large iron frame building being constructed by the defendant in the village of Seneca Falls, Seneca county, N. Y. The notice in the case at bar states the place of the accident with as much particularity as it was stated in the cases cited. In the case

of Bovi v. Hess, 123 App. Div. 389, 107 N. Y. Supp. 1001, cited by the appellant, the notice that was held defective stated that the plaintiff had been injured while working in the defendant's factory at a mixing machine or "something of that kind," through the fault of the foreman. Neither the location of the factory nor the place therein where the accident occurred was definitely stated. The notice in the Bovi Case does not even positively state that the defendant was working at a mixing machine at the time of the accident. Manifestly such a notice was worthless as a basis for the employer's investigation.

The cause required by the statute to be stated is the physical rather than the negligent cause of the accident. Hurley v. Olcott, supra, affirmed 198 N. Y. 132, 91 N. E. 270, 28 L. R. A. (N. S.) 238; Valentino v. Garvin Machine Co., 139 App. Div. 139, 142, 123 N. Y. Supp. 959; Impellizzieri v. Cranford, 141 App. Div. 755, 126 N. Y. Supp. 644; Foster v. Crooker Co., 142 App. Div. 268, 126 N. Y. Supp. 1020; and McGlynn v. Penn. Steel Co., 144 App. Div. 343, 352, 129 N. Y. Supp. 45. In the Hurley Case, the notice was in the form of a letter sent by the employé's wife to the employer. The cause of the injury was stated with more detail than in the case at bar, but the letter did not refer in any way to the Employer's Liability Act. It did not state an intention to sue, nor did it state whose fault or negligence was responsible for the accident. The sufficiency of the notice appears to have been questioned by the appellant in the Court of Appeals, and the affirmance of the judgment for the plaintiff by that court would at least seem to be authority for the proposition that the notice need only contain a statement of the time, place, and cause of the accident, and that any statements contained in cases in the lower courts to a contrary effect are erroneous. In Bertolami v. United Engineering & C. Co., 198 N. Y. 71, 91 N. E. 267, the notice held sufficient, aside from mere general allegations of negligence, contained only the specific statement that as a result of such general negligence "large quantities of rock and earth and a bucket were caused to fall" upon the body of plaintiff's intestate. I think that the notice in the case at bar stated the time, place, and physical cause of the accident with sufficient particularity to enable the master to investigate the same and to prepare any defense to an action for damages based thereon. To render such investigation possible is the main object of the notice, and if it be sufficient to accomplish that purpose, any unintentional inaccuracy must, according to the specific provisions of the statute, be disregarded unless the master has been actually misled thereby. Heffron v. Lackawanna Steel Co., 121 App. Div. 35, 42, 105 N. Y. Supp. 429. The notice in the case at bar stated the time of the accident, viz., February 5, 1907; the place, viz., the boiler room of the defendant's factory, between specified streets; and the physical cause, viz., the catching of the plaintiff's right arm between a belt and wheel in said room while the plaintiff was cleaning the belt. Such information should have been sufficient to enable the defendant to investigate the alleged occurrence.

The cases cited by the appellant are not controlling. In Finnigan v. N. Y. Con. Co., 194 N. Y. 244, 87 N. E. 424, 21 L. R. A. (N. S.) 233,

the notice failed to apprise the master of the specific cause of the accident because it conjunctively alleged a number of general causes, not in any manner actually relied upon, without in any way disclosing the actual facts of the accident. In Simpson v. Foundation Co., 201 N. Y. 479, 95 N. E. 10, all that was held was that a notice, stating that the plaintiff was struck by a bucket and fell into a pit, did not inform the master of the cause of the accident with sufficient particularity to enable it to make its investigation. There was nothing in the notice in that case showing what the servant was doing, from where he fell, or under what circumstances, or why or how the bucket struck him. The court said that the notice must describe in some reasonable way "the occurrence as it actually took place." It is true that a hasty reading of the opinion in the Simpson Case might lead one to the appellant's conclusion that more details should have been stated in the notice in the case at bar. Thus the learned judge, writing for the court in that case, stated that the notice there did not state any defect of the ways, works, or machinery, or the negligence of any person exercising superintendence with the authority or consent of the employer, or why the bucket struck the plaintiff, what he was doing at the time, whence he fell, or under what circumstances. I do not think, however, that the court intended to hold that any or all of such facts need necessarily be stated in every notice. The learned judge enumerated them in the alternative, as instances of facts that might, if stated, have saved the notice in question from criticism. Any one or more of the suggested allegations might be absent from a particular notice, and yet the notice sufficiently allege the time, place, and physical cause of the occurrence so as to indicate the real, producing trouble sufficiently to enable the master to investigate the matter, thereby accomplishing the statutory purpose.

[5] A further and rather technical objection is made to the sufficiency of the notice, on the ground that it does not appear that it was signed by the plaintiff or by any one in his behalf. In giving the substance of the letter, the plaintiff's witness did not state whether he signed it at the end, and no one asked him regarding the matter during the trial. The statute provides that the notice shall be "signed by the person injured or by some one in his behalf." Laws 1909, c. 36, § 201. The counsel for the respondent contends that the signing may be presumed, and cites Smith v. Milliken Brothers, Inc., 200 N. Y. 21, 24, 93 N. E. 184. That case is not in point with the situation here. There the objection was that the notice had been signed in typewriting, and the Court of Appeals held that the fact that the notice had been produced at the trial was sufficient in the absence of its production before it on the argument to raise a presumption that it had been properly signed.

In Hunt v. Dexter Sulphite Pulp & Paper Co., 100 App. Div. 119, 91 N. Y. Supp. 279, affirmed 183 N. Y. 544, 76 N. E. 1097, a typewritten notice was held a notice in writing within the statute. In the case at bar, however, no notice was produced, and the contents of the notice alleged to have been served were proven by secondary evidence. The learned counsel for the appellant cites no authority to show that

the notice was not properly signed within the meaning of the statute, assuming its contents to have been as disclosed by the secondary evidence. According to the plaintiff's witness, the name of the plaintiff was twice inserted in the body of the letter. Near the beginning of the letter is said to have stated, "Kindly investigate the accident to John Rodzborski." This was followed by an account of the accident, and the letter stated, "Mr. Rodzborski is crippled." The etymology of the verb "sign" does not necessarily require that the signature be placed at the bottom of the writing. "Sign" and "subscribe" are not synonymous. The early statutes relating to wills of real estate (32 and 34 Henry VIII, and 29 Charles II) required the instrument to be signed by the testator, and it was held that there was a signing, although the name was written in the body of the instrument instead of at the end thereof. See Lemayne v. Stanley, 3 Lev. 1; Smithdeal v. Smith, 64 N. C. 52, 53; Lawson v. Dawson, 21 Tex. Civ. App. 361, 53 S. W. 64; Adams v. Field, 21 Vt. 256. A similar construction was given to the provision of the statute of frauds, requiring a memorandum signed by the party sought to be charged (see Knight v. Crockford, 1 Esq. N. P. Cas. 190; Clason v. Bailey, 14 Johns. 486; and Drury v. Young, 58 Md. 546, 42 Am. Rep. 343), although a contrary rule has obtained in this state since the substitution of the word "subscribed" by the Revised Statutes (James v. Patten, 6 N. Y. 9, 55 Am. Dec. 376). In Clason v. Bailey, 14 Johns. 487, supra, the chancellor said:

"If the name of a party appears in the memorandum, and is applicable to the whole substance of the writing, and is put there by him or by his authority, it is immaterial in what part of the instrument the name appears, whether at the top, in the middle, or at the bottom."

In Drury v. Young, supra, it was held that a printed name towards the beginning of the memorandum, if recognized and appropriated as his by the party, constituted a sufficient signing of the memorandum. I think that when the plaintiff's witness, at the request and instigation of the plaintiff, wrote the plaintiff's name into the body of the letter, informing the defendant of the time, place, and cause of the accident to the plaintiff, such writing of the name constituted a signing of the notice within the meaning of the statute. The statute requires a signing and not a subscribing.

The judgment and order should be affirmed, with costs.

THOMAS and RICH, JJ., concur. JENKS, P. J., and CARR, J., dissent.