(121 App. Div. 35)

## HEFFRON v. LACKAWANNA STEEL CO.

(Supreme Court, Appellate Division, Fourth Department. July 9, 1907.)

**1. MASTER AND SERVANT—EMPLOYER'S LIABILITY ACT—NEGLIGENCE OF SUPERINTENDENT.**

A foreman of a gang varying from 10 to 50 men, having immediate superintendence of the work and of the men engaged therein, who were obliged to do as he directed, was, in directing one of them to remove planks forming a part of the floor of the room where the employés worked and not to replace the same, engaged in an act of superintendence within Employer's Liability Act, Laws 1902, p. 1748, c. 600, giving a cause of action for injury to an employé caused by negligence of another person in the service of the employer intrusted with and exercising superintendence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 371.]

**2. SAME—DISREGARD OF INSTRUCTIONS—EFFECT.**

Though one exercising the power of superintendence may have disregarded his instructions in directing planks forming a part of the floor of the room where employés worked to be removed, and not to be replaced, yet, being within the scope of his authority in so doing, the employer is liable for injuries resulting therefrom.

**3. SAME—ACTION FOR INJURIES—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.**

An employé working at night, with a number of other men, in a large room, in a building in process of construction, and who was not warned that planks forming a part of the floor had been removed, was not guilty of contributory negligence, as a matter of law, in attempting to cross the room.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1113–1117.]

**4. SAME—NOTICE OF INJURY—SUFFICIENCY.**

A notice served in pursuance of Employer's Liability Act, Laws 1902, p. 1748, c. 600, § 1, subd. 2, declaring that no action shall be maintained unless notice of the time, place, and cause of the injury is given to the employer, stating that the employé, serving the same, was injured by falling through an opening, did not sufficiently designate the place of injury; the plant where the accident occurred consisting of many buildings.

**5. SAME—INSUFFICIENT NOTICE—EFFECT.**

Employer's Liability Act, Laws 1902, p. 1748, c. 600, § 1, subd. 2, declares that no action shall be maintained unless notice of the time, place, and cause of injury is given to the employer, but that no notice shall be invalid solely by reason of any inaccuracy in stating the time, place, or cause of injury, if it be shown that there was no intention to mislead, and that the party entitled to notice was not misled thereby. *Held* that, though a notice insufficiently designated the place of injury, the defect was not fatal where there was no controversy as to the place where the employé was injured.

**6. SAME.**

A notice served in pursuance of Employer's Liability Act, Laws 1902, p. 1748, c. 600, § 1, subd. 2, stated that the employé's fall was caused by reason of the employer's negligence in failing to properly guard and light the opening in the floor of the room through which he fell, through its failure to make reasonable rules for the safety of employés, and its negligence in failing to properly inspect the opening and its surroundings. The parties on the trial disregarded the charges of negligence set forth in the notice, and the case was tried on the theory that the foreman of defendant, in directing planks to be removed and not replaced, was negligent, and that in so doing was engaged in an act of superintendence. At the

close of the evidence the objection was first raised that the notice did not allege the negligence on which plaintiff stood. *Held*, that the objection came too late.

**7. SAME.**

An objection, made at the close of the evidence, to a notice of injury served pursuant to Employer's Liability Act, Laws 1902, p. 1748, c. 600, § 1, subd. 2, that it was insufficient, in that it made no reference to the negligence on which plaintiff stood, and that plaintiff was estopped, under the authority of a case cited, from taking any other and different position than the one in the notice, was too indefinite.

Appeal from Trial Term, Erie County.

Action by Charles F. Heffron against the Lackawanna Steel Company. Verdict for plaintiff, and, from an order setting the same aside and granting a new trial, plaintiff appeals. Order reversed, and motion for new trial denied.

The plaintiff was injured by falling through an opening in the floor of defendant's steel mill, and recovered a verdict of $5,500 at the Trial Term, and a motion was made to set it aside on all the grounds specified in section 999 of the Code of Civil Procedure. The motion was granted on the exceptions of the defendant "and upon the ground that the verdict was contrary to law." In the memorandum filed by the trial judge, the specific ground upon which the order was founded was that Lawrence, whose relation to the defendant is considered in the opinion herewith, was not a superintendent, or acting in that capacity, with reference to the act which constituted the negligence against the defendant.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

J. H. Metcalf, for appellant.
Evan Hollister, for respondent.

SPRING, J. The defendant is the owner of a large steel plant in the town of West Seneca, near the city of Buffalo. In April, 1904, the plaintiff was an iron worker in its employ and had been one of its employés since a mere lad. On the 4th of April he was engaged with a helper in drilling holes in angle irons in the tapping room of its steel mill, which was a building 240 feet by 60, four stories high, and one of the many buildings comprising the extensive plant of the defendant. The work of drilling was done with a hand-ratchet drill, and an iron implement called an "old man" was used as a brace for the drill. A block of wood was required to tighten up the brace. The plaintiff, with his helper, was working nights with about 20 other men on the third, or tapping, floor of this large building. Extending lengthwise north and south of the entire floor, along its center, were cupolas, or "mixers," in which the iron ore is melted, and the molten metal tapped or run out—hence the name "tapping" room. The floor on the east side of this central line of cupolas was made up of iron plates laid lengthwise, and each plate was 6 feet by 12, bolted to the iron bed pieces on which it rested. The plates were all in place, except one tier next to the cupolas which had not been fitted. The space designed for these was temporarily covered with planks. The planks where one of

these plates was to be placed had been removed. When the plaintiff went to his work at 6 o'clock in the evening, he obtained his tools and a torch from a locked cupboard, to which a day laborer also had access. Two torches were needed for successful work in drilling these irons, as two men worked together. The torch was a pint tin can filled with oil, from which a wick projected. There was only one torch in the locker, and the plaintiff asked McGuire, his foreman, for another, and was told there were no more, and he must get along with the one. The two men worked together until nearly midnight, when the block used in tightening the "old man" became battered from hammering to keep it in place. The plaintiff knew there was a block in the southeast corner of the room, and started after it. The only light, aside from the torches, was an electric arc light at the southwest corner of the room and a small bonfire, used by the men to warm their hands, neither of which aided the plaintiff in his quest for the block. He had gone about 45 feet when he fell in the uncovered hole, going down 26 to 28 feet, fracturing both legs and sustaining other serious injuries. Muldoon, a witness on behalf of the plaintiff, who was then in defendant's employ, testified that late in the afternoon of the day the plaintiff was injured he was directed by Lawrence, his foreman, to remove one or two sets of these planks on the tapping floor, and to throw down some cast iron separators or braces, which he did, finishing the work just before quitting time. When he completed the work, Lawrence, the foreman, told him he need not cover the hole again, and, accordingly, he left it uncovered.

The action is under the Employer's Liability Act, Laws 1902, p. 1748, c. 600; and the respondent contends, and the court below in granting the new trial has held, that Lawrence, in giving this direction, was not exercising an act of superintendence, but it was a mere detail of the work. The business carried on by the defendant is of great magnitude, and several thousand men are in its employ at this plant. Necessarily, there are various departments and several grades in the line of superintendency, and each superintendent or foreman must be vested with authority and the exercise of discretion in the business committed to him. The general manager or superintendent of any particular department cannot be in personal touch with every branch of the work intrusted to him. The execution of his general orders depends upon subordinates, who direct the work and manage the men under them. Muldoon testified that Lawrence was his foreman, having charge of a number of men, varying from 10 to 40. He further said:

"His duties were to look after the work and see to the men. He directed me as to what work to do, and he examined the work that I was doing and told me if I was not doing it right. There was no one else that I received directions from as foreman of that work. He was the only person who was over me as foreman."

Lawrence was a witness on behalf of the defendant. He testified that Muldoon was in the gang immediately in charge of Wells, a subforeman; that Wells was under the orders of Lawrence, who directed the work and "had authority over Muldoon"; that he was "the foreman directly authorized by this company to carry on that work." The

average number of men under him was 10, but at times his gang would run up to 40 or 50 men. He was not required to do manual work, but his "business was to superintend and direct the other men, * * * and Muldoon was expected and obliged to do anything I told him." Every superintendent or manager, whatever may be his rank, or however extensive may be the business, is responsible to some superior authority. The first superintendent is amenable to the board of directors. That body may not elect to interfere, but, if a test of authority is made, the superintendent is the subordinate of the men who employ him. In the descending scale of superintendents, supervisors, or foremen, or by whatever name they are designated, each one is responsible to some higher functionary.

Lawrence directed Muldoon to do a specific independent act. He was in sole command in giving the direction. The work he ordered to be done was not a detail, not a minute, incidental part of the work requiring no oversight. He was exercising an act of superintendence within the scope of the employer's liability act. The direction was just as much that of one exercising superintendence as if he had ordered the men to lay all the floors in the building, to construct the cupolas, or to quarry the stone for the walls. Unless a direction of this kind comes within the function of a superintendent, or is exercising an act of superintendence, the statute referred to is shorn of much of its efficiency. Many of the acts which formerly were held to be those of a fellow servant and related to a detail of the work have been eliminated from that category, and come within the scope of superintendency by virtue of this act. Bellegarde v. Union B. & P. Co., 90 App. Div. 577, 86 N. Y. Supp. 72; Gmaehle v. Rosenberg, 178 N. Y. 147, 70 N. E. 411.

In Faith v. N. Y. C. & H. R. R. R. Co., 109 App. Div. 222, 95 N. Y. Supp. 774, affirmed 185 N. Y. 556, 77 N. E. 1186, the decedent was an experienced boiler maker. He, with two other men, was repairing an engine front under the direction of a foreman named Norris, who was in charge during the absence of the general superintendent. Norris directed two of the men to detach the front, which they did. The usual method of doing this was to remove all the bolts, with the exception of one at the top, which was left to hold the door, or front, until tackling could be fastened to it. In this instance, the men, in the presence of Norris, removed all the bolts. The plaintiff was not present when the work was in progress, but returned with the tackling and took hold of the door, supposing it was still held in place by the one bolt, when it toppled over on him, causing his death. While the act of keeping the single bolt in place required no great skill or intelligence, yet the omission to do so was in the presence of Norris, and it was held that he was exercising acts of superintendence under this statute, and the defendant was responsible for his lack of proper oversight.

In McHugh v. Manhattan Ry. Co., 179 N. Y. 378, 72 N. E. 312, the action was under the employer's liability act. It was the duty of the plaintiff's intestate to couple the engine to a car on a switch of the defendant. One Coleman was the train dispatcher and in charge of

the switch yards. He gave the signal by an electric gong when the train was to start after it had been coupled. In his absence, Flanagan, his train clerk, acted in his stead. Flanagan gave the signal when plaintiff's intestate was making the coupling. The train was started, and he was crushed under the trucks. It was claimed by the defendant that Flanagan was not performing an act of superintendence, but a mere detail of the work. The Court of Appeals held otherwise, stating that "a new liability was imposed on the master" by this act. To the same effect are McBride v. N. Y. Tun. Co., 101 App. Div. 448, 92 N. Y. Supp. 282; Carlson v. United E. & C. Co., 113 App. Div. 371, 98 N. Y. Supp. 1036; Brauenberg v. Solomon, 102 App. Div. 330, 92 N. Y. Supp. 506.

It is generally unsatisfactory to attempt to reconcile border cases reaching contrary results. Yet we think the authorities relied upon by the respondent may reasonably be distinguished from the one under review and from those already cited. In Guilmartin v. Solvay Process Co., 115 App. Div. 794, 101 N. Y. Supp. 118, the plaintiff, with other men, was engaged in extricating a large belt, connecting two shafts, which had run off the pulley and doubled around it, pulling tight. A shift foreman was assisting in the work like any fellow servant of the plaintiff. He directed the plaintiff to step over the shaft and throw the belt off, and in obeying the direction his leg became entangled in the belt, and he was injured. He was an old employé, as familiar with the situation as the shift foreman. Four other men, one of whom was the shift foreman, were pulling on the belt, and its separation was the cause of the accident. The court held that the shift foreman was a fellow servant, laying stress upon the fact that he was actually participating in the effort to extricate the belt.

So, in Quinlan v. Lackawanna Steel Co., 107 App. Div. 176, 94 N. Y. Supp. 942, affirmed 181 N. Y. 523, 73 N. E. 1130, the foreman gave the order to the plaintiff when to move an electric crane, and the electricity was turned on by him when plaintiff was oiling the machinery, and he received a shock. The court held, under the evidence, that the foreman had no such general charge of the particular buisness in hand as to constitute him a superintendent within the meaning of the act; and, further, that a superintendent implies some discretionary power, and "such a supervision and charge as gives power of direction; and it must be with authority to direct the manner and means of prosecuting the work in charge."

Lawrence's authority was sufficiently extensive to meet these requirements. The defendant in the present case gave no evidence showing any limitation upon his authority. The question was submitted to the jury, and their finding, that he was a superintendent, or exercising an act of superintendence, in directing Muldoon to remove the planks and not replace them, is sustained by the evidence. Lawrence, in a hesitating, uncertain way, testified that he did not remember the direction given to Muldoon, but the question of fact has been settled in favor of the plaintiff. If Lawrence disregarded his instructions in leaving the hole uncovered, the defendant is not absolved from liability to the plaintiff for that reason. If he was within the

scope of his authority in directing the removal of the planks and in ordering the separators to be thrown through the opening, the defendant is responsible for damages which are the proximate result of his unskillful conduct in carrying on the work.

Nor was the plaintiff guilty of contributory negligence as matter of law. He was working in a large room with 20 other men. While the building was to some extent in process of construction, the plaintiff had a right to assume it was reasonably safe for himself and his co-employés to perform the work assigned to them. The floors were reasonably safe, except for the temporary displacement of the planks, and leaving the hole in the floor is the negligence which caused the injury. He knew nothing of this defective condition, and there was nothing to put him on his guard.

The defendant claims the notice served in pursuance of the act was inadequate, and we think it was not sufficiently explicit. Subdivision 2 of the act provides that:

"No action * * * shall be maintained unless notice of the time, place and cause of the injury is given to the employer."

The service of the notice conforming to the statute is a prerequisite to the maintenance of the action. Chisholm v. Man. Ry. Co., 116 App. Div. 320, 101 N. Y. Supp. 622. The object of the notice is to enable the employer to investigate the claim, and, in order that he may do so intelligently, it must be reasonably specific as to "the time, place and cause of the injury." The notice served stated:

"That on or about the 4th day of April, 1903, while I was in your employ at the steel plant owned and operated by you in the town of West Seneca, I fell through an opening, fracturing both my legs and sustaining other great personal injury."

The steel plant consisted of many buildings, and a mere designation of "an opening" as the place was too general to furnish any information, and did not fulfill the obligations of the statute.

There are other considerations, however, which compensate for this defective notice. In the first place, it is very doubtful whether the question of the inadequacy of the notice was raised on the trial. There was considerable conflict in the evidence over the question of the service of the notice within the time fixed by the statute. The notice was offered and received in evidence. The defendant's counsel objected to its reception upon the following grounds:

"I object to this proof under the employer's liability act, on the ground that there has not been notice or service of a proper notice upon the defendant."

If he claimed that the notice did not state the place where the accident occurred with sufficient precision, he should have raised that objection, especially in view of the saving clause of the statute to which I will later call attention. The plaintiff might have been able to obviate the objection had attention been called to the particular defect now urged. Again, on the motion for nonsuit, the sufficiency of the notice was not challenged. After all the evidence was in, counsel for the defendant called attention to another aspect in which the notice was defective, and to which I will advert later.

We will assume, however, that the question was properly raised. The statute contains this clause:

"But no notice under the provisions of this section shall be deemed to be invalid or insufficient solely by reason of any inaccuracy in stating the time, place or cause of the injury if it be shown that there was no intention to mislead and that the party entitled to notice was not in fact misled thereby."

There was no direct proof that the defendant was not misled by the insufficient statement of the place where the accident occurred. The evidence itself, however, negatives any such assumption. There were many of the defendant's employés in the room when the plaintiff fell through the opening. One of them, anyway, looked down through the opening holding his torch. Others went after the plaintiff. Lawrence testified that he saw the hole both before and after the injury, and the defendant's counsel had a photograph of this opening on the trial. There never was any controversy over the place where the plaintiff fell, and the defendant could not have been deceived by the failure of the notice to specify the exact location; nor could the plaintiff have intended to mislead relative to a fact which was not in dispute.

The notice in defining the alleged negligence of the defendant says:

"That my fall was caused solely by reason of your carelessness and negligence in failing to properly guard and light said opening and to furnish me with sufficient and proper lights and lanterns, and through your failure to make and promulgate reasonable rules and regulations for my safety and those of your other employés, and through your carelessness and negligence in failing to properly inspect said opening and its surroundings."

The court took away from the consideration of the jury the failure to light or inspect said opening, or to promulgate rules, which excluded practically all the allegations of negligence charged in the notice. The case, however, was tried on the assumption that Lawrence was acting as superintendent in leaving the opening uncovered, and whether he was negligent in this regard was the question submitted to the jury. The parties on the trial disregarded the charges of negligence set forth in the notice, and no question was raised on this subject until the close of the evidence. The counsel for the defendant asked for the direction of a verdict, and referred to the notice, adding:

"And which has no reference whatsoever to the alleged negligence which the plaintiff now stands upon, and therefore that the plaintiff is estopped, under the authority of Rochevot v. Wolf (decided in the Appellate Division) 89 N. Y. Supp. 142, 96 App. Div. 506, from taking any other and different position than the position we find in this notice."

This was too late to raise the question, after the trial, without objection, had progressed to a conclusion upon an entirely different line; and, beyond that, the criticism was too indefinite. The defects in this notice did not mislead the defendant, and for that reason they did not nullify it.

On each of the issues involved there was a fair question of fact and with ample evidence to sustain the verdict. The order granting a new trial was not on the ground that the verdict was contrary to the evidence, and it should not be upheld on that ground.

The order should be reversed, with costs of this appeal, and the motion for new trial denied.

Order reversed, with costs and disbursements of this appeal, and motion for new trial denied. All concur.