FOSTER v. B. I. CROOKER CO. et al.

(Supreme Court, Appellate Division, Fourth Department. January 11, 1911.)

1. MASTER AND SERVANT (§ 252*)—INJURY TO SERVANT — NOTICE OF INJURY—
SUFFICIENCY.

A notice of injury to a servant sufficiently states the cause of injury within the employer's liability act (Consol. Laws, c. 31, §§ 200–204), where setting forth the physical cause, the striking of plaintiff with a moving crane, and charging defendant with negligence, though not setting forth the promise of defendant's superintendent that the crane should not be run while plaintiff was doing the work in which he was injured, or the authority of the superintendent to make the promise.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 806; Dec. Dig. § 252.*]

2. MASTER AND SERVANT (§ 205*)—ASSUMPTION OF RISK.

An employé of a contractor for construction of a building directed by the contractor to do some work standing on a narrow girder, just above which was a rail, on which ran a crane, owned and operated by the owner of the building, had a right to rely on the assurance of the contractor that the crane would not run while he was working, and, having relied on it, in going to work there did not assume the risk of the crane running.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 547–549; Dec. Dig. § 205.*]

3. MASTER AND SERVANT (§ 288*)—INJURY TO SERVANT—NEGLIGENCE.

A contractor for construction of a building, who directed an employé to do some work standing on a narrow girder, just above which was a rail, on which ran a crane owned and operated by the owner of the building, assuring the employé that the crane would not run while he was at work, on which assurance the employé relied, is not exonerated from liability by merely telling the operator of the crane to look out for the men at work; but whether he performed his full measure of duty to the employé in carrying out the promise, the preventing of the operation of the crane being essential to make the place where the employé was working reasonably safe, is a question for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

4. MASTER AND SERVANT (§ 288*)—INJURY TO SERVANT—RELIANCE ON MAS-
TER'S PROMISE.

That an employé in going to work on the track of a crane did not rely on the promise of his master that the crane would not run while he was working there is not shown, at least conclusively, by the fact that he also told the operator of the crane to remember that he was working there.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

5. DAMAGES (§ 158*)—PERSONAL INJURIES—PLEADING AND EVIDENCE—INJURY
TO NERVES.

Though the complaint only alleges physical injuries causing great pain and suffering, and averred to be permanent, it is competent to show injury to the nerves which are the natural and reasonable result of the physical injuries.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 441–446; Dec. Dig. § 158.*]

6. DAMAGES (§ 132*)—PERSONAL INJURIES—EXCESSIVE VERDICT.

Plaintiff's left foot having been crushed, the leg fractured in two places, the knee injured, the hip crushed and bruised, the ribs crushed in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and the sphincter muscles lacerated, and at the trial, 20 months after the injury, he, then 39 years old, having been obliged to use a crutch, and physicians having testified that his injuries would be permanent, and that he would never be able to work at his trade of carpenter, a verdict. of $7,700 was not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385; Dec. Dig. § 132.*]

Appeal from Trial Term, Erie County.

Action by Charles E. Foster against the B. I. Crooker Company, impleaded with another. From a judgment for plaintiff against said company for $7,702.09, damages and costs, on a verdict, and from an order denying a motion for a new trial on the minutes, said defendants appeal. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Clinton B. Gibbs, for appellants.
Frederick Haller, for respondent.

SPRING, J. The action is negligence in pursuance of the employer's liability act (Consol. Laws, c. 31, §§ 200–204). In June, 1908, the plaintiff was employed by the defendant Crooker Company as a carpenter in the construction of a steel building owned by the defendant Wickwire Steel Company in the city of Buffalo. The building was over 200 feet long and nearly 60 feet in width. About 50 feet from the floor on each side of the building for its entire length was an iron girder about 18 inches in width, and in the middle, and 3 inches above it, was a rail along which was operated a crane or car propelled by electricity and in the immediate charge of a man in a cage fastened to one end and below the crane. The crane was owned and operated by the defendant Wickwire Steel Company, and was used to convey material, parts of engines and machinery to the northerly part of the building where the Wickwire Company was engaged in putting together and installing blowing machines. The girder came within six inches of the wall of the building, and was about four feet below the bottom of the upper tier of windows. The building, which had been in process of construction for about two years, was nearly completed, and plaintiff had been employed on it from the commencement of the work. He and two other carpenters had been engaged for three days in putting in the sash and windows on the upper row of windows on the east side of the building. The method of performing this work was for plaintiff and Roberts, his fellow workman, to measure the length and width of the window frame, noting the measurements on a stick which one of the men threw down to Dugan, the other carpenter who was on the floor and who fitted the windows to the size indicated. It was then hauled up with a block and tackle to the plaintiff and Roberts, who were standing on the girder. Each sash with the glass weighed about 100 pounds, and was in size five feet by four feet four inches. The plaintiff and Roberts put the window in the frame. There was no scaffold, and they were obliged to stand on the

girder astride of the rail, and, at best, the place was a dangerous one in view of the work which they had to perform.

They were directed by Youse, the foreman and acting superintendent of the defendant, to perform this work. The men looked the situation over and told the foreman it was not possible to erect a staging for them to stand on while doing the work. Dugan, in testifying to what Youse said in reply to this information, gave this version:

"He said we could stand on the track of the crane and put them in from that. I said 'Yes,' we could do that, if the crane would not run onto us. I said to Mr. Youse, 'Would it not be well to wait to some day this crane was not running.' He said, 'It is running every day.' I said, 'It is running Sunday?' He said, 'Yes; are you men afraid to go up there?' We said, 'No; we weren't frightened by the height, but we were afraid the crane would run onto us.' He said, 'I will take care the crane don't run onto you,' and we went on to work at the windows."

While they were putting the windows in place on the west side, the crane came within about 15 feet of them, and evidently caused them some alarm. On Monday morning they commenced work on the southerly end of the east side of the building. Before doing so the three carpenters again spoke to Youse, the superintendent, in regard to the peril they were in from the crane, informing him that it had approached within 15 feet of them when they were at work on the west side of the building. The plaintiff in narrating this conversation, and the other two carpenters gave substantially the same version, testified:

"Mr. Roberts said that he didn't like that place up there. Youse asked Roberts if he was afraid of falling, and Roberts says: 'No, sir; I am not afraid of falling, but I am afraid of the crane.' Youse says: 'You needn't be afraid of that crane. We will see that the crane does not hurt you.'"

On Tuesday morning as they were going to work plaintiff told Rose, who had charge of the running of the crane, to remember they were to work on the girder. Roberts and the plaintiff had been at work over an hour, and the crane had not approached them. They were lifting a window into place, one on each side of it, and they were required to raise it breast high in order to place the lower end in the frame. There were heavy angle iron braces extending diagonally from the girder to the side of the building, and also a perpendicular brace, and these had to be avoided in order to get the window in place. The attention of the men was devoted closely to this business when the crane came along. Roberts observed it, letting go his hold of the sash, and warned the plaintiff of the approach of the car. The plaintiff, incumbered by the sash, endeavored to extricate himself, but was unable to do so, and was crushed between the crane, the sash, and angle iron braces, and very seriously injured. There were automatic riveters driving bolts in a smoke stack which was in process of erection in the building and other noises incident to the construction of so large a building, and the plaintiff consequently failed to hear the approach of the car, diverted as his attention was by the particular work in which he was engaged.

At the close of the evidence the complaint was dismissed as to the defendant Wickwire Steel Company, and the verdict was rendered against the appealing defendant alone.

The action was submitted in pursuance of the employer's liability act, and the defendant contends that the notice which the plaintiff served upon the defendant was inadequate. It states the time with certainty. It gives the place as the millhouse and building of the Wickwire Steel Company, adding the location of that company. It gives the cause as follows:

"That the cause of said personal injuries was that at the said time and at the said place a certain truck, car, vehicle, and crane was projected, moved, propelled, and run upon, into, over, and against me, my person, and body, with such force and violence as to crush, tear, lacerate, bruise, break, and contuse my person, limbs, and body, and jamb, push, press, and squeeze my person, limbs, and body against the braces, irons, supports, hangings, and fittings of the said truck, car, vehicle, and crane, and of the track and way on and about which the same was being operated, and likewise against the said mill, house, and building and against the said track and way."

The notice continues:

"And I further claim that all of the matters aforesaid occurred through the sole negligence of you, the said Wickwire Steel Company, and of you, the said B. I. Crooker Company, and without any contributory negligence whatever on my part."

The notice is indefinite in its designation of the place, although this omission is somewhat cured by the reference to the crane in the description of the cause of the accident. Stripped of its verbiage in giving the cause, it may be fairly said to state that the crane with its appliances was projected upon the employé with such force that he was squeezed in between the braces and the crane and he was thereby injured, and that the catastrophe was attributable to the negligence of the defendant, and without fault upon his part. There was no defect in the crane or in any of the appliances by which it was operated, nor in the girders or braces. The liability of the defendant was mainly based upon the fact that the superintendent had assured the plaintiff that the crane would not run upon the track when he was at work, and that he relied upon this assurance. The place where the work was to be performed was dangerous, inherently so. The defendant was not absolved from its obligation to the plaintiff to make it as reasonably safe as the surroundings permitted. "Reasonably safe" is a flexible term. In this instance the work consisted in handling a heavy window 50 feet from the floor and entangled among braces, and the operator standing on a girder 18 inches wide with an iron rail along its center. The intrinsic danger would be materially increased if the car or crane came along when the plaintiff was engaged in lifting the window into place four feet above the girder. It was against this particular, overwhelming peril that he was careful to be guarded against by obtaining the assurance of the superintendent that he had arranged with the Wickwire Company not to propel its crane while the plaintiff was at work putting the windows in place. The notice does not set forth this promise of Youse. It does state the physical cause, and charges the defendant with responsibility for it. I think it was not necessary either to set forth the authority of Youse or the promise referred to.

In Bertolami v. United Engineering & Contracting Co., 198 N. Y. 71, 75, 91 N. E. 267, 269, the plaintiff's intestate was killed by a mass of rock and dirt falling upon him while he was at work in the construction of the terminal tunnel of the Pennsylvania Railroad in the city of New York, and the validity of the notice was considered by the Court of Appeals. It was claimed in the notice, in general terms, that the injuries of the intestate were caused by the failure of the defendant to furnish him with a safe place in which to work, and also in that it failed to keep that place safe while he was at work, and the court held this general description was sufficient. It then continues the discussion as follows:

"It is true that it does not specify the name, grade, or duties of the particular person representing defendant and through whom it acted when guilty of the alleged omissions. It does not state that the person through whom defendant made default was an agent acting as or exercising duties of a superintendent in its behalf, but we do not think that it was necessary for the notice to go to this extent. The defendant was notified of that which immediately fell and injured the intestate and was apprised of the claim that it was responsible for the accident because of its failure in substance to inspect, safeguard, and keep safe the place wherein the intestate was working. This omission, if it existed, was of necessity primarily that of a representative who had superintendence over and control of the conditions which prevailed where the accident happened, and, without going further than it did and identifying this representative and particularizing his grade and duties, the notice seems to us to comply with the view adopted in the Finnigan Case [194 N. Y. 244, 87 N. E. 424, 21 L. R. A. (N. S.) 233]."

While the notice might well have been more specific, I think it should not be held insufficient.

The case of Finnigan v. N. Y. Contracting Co., 194 N. Y. 244, 87 N. E. 424, 21 L. R. A. (N. S.) 233, is perhaps the most stringent of any case in passing upon the requirements of the notice prescribed in this act. In that case "many independent grounds of negligence" were set forth in the notice to the employer, and it could not possibly, from the notice itself, obtain any information which would be useful to it in making an investigation of the cause of the accident. There was nothing in the notice to advise the employer that the real cause of the injury was in leaving a hidden undischarged cartridge of dynamite in proximity to the place where the plaintiff's intestate was at work and the unexpected explosion of this dynamite caused his death. The framer of the notice grouped a variety of causes, which, while not intended to deceive as the record shows, could have no other effect than to leave the employer wholly in the dark as to the manner in which the injuries were inflicted; and in that respect the notice differs radically from the one in controversy.

The notice is sufficiently explicit within the more recent authorities, which, while not in any way repudiating the doctrine of the Finnigan case referred to, do to some extent limit its application. Martin v. Walker & Williams Mfg. Co., 198 N. Y. 324, 329, 91 N. E. 798; Bertolami v. United E. & C. Co., 198 N. Y. 71, 91 N. E. 267, supra; Hurley v. Olcott, 198 N. Y. 132, 91 N. E. 270, 28 L. R. A. (N. S.) 238; Valentino v. Garvin Machine Co., 139 App. Div. 139, 123 N. Y. Supp. 959. The notice in Logerto v. Central Building Co., 198 N. Y. 390,

91 N. E. 782, comes within the explicit condemnation of the Finnigan Case, in that it states independent causes of the accident, and the employer from the facts contained in the notice would not be able to make any examination for the purpose of ascertaining whether the accident really occurred, or, if so, if it was responsible for it. The object of the notice is to advise the employer as to the time, place, and cause of the accident in order that he may be able to investigate and ascertain the truth of the claim of liability charged against him by the person injured. Logerto v. Central Building Company, 198 N. Y. 390, 393, 91 N. E. 782; Heffron v. Lackawanna Steel Co., 121 App. Div. 35, 41, 105 N. Y. Supp. 429. The service of the notice is a condition precedent to the maintenance of the action pursuant to the employer's liability act, and yet it was not expected that the notice must be precise in form. If its purpose to inform the employer of the time, place, and cause of the accident can fairly be spelled out of the notice, the provision of the statute is complied with. The saving clause in the statute that the notice shall not be deemed to be "insufficient wholly by reason of any inaccuracy in stating the time, place, and cause of the injury," if it appears there has been "no intention to mislead, and that the party entitled to notice was not in fact misled hereby" was embodied in the statute advisedly.

In the present case the accident occurred in daylight in a conspicuous place in the presence of several of the defendant's employés. Mr. Haggerty, the general foreman and superintendent of the defendant, came promptly to the rescue of the plaintiff, and extricated him from the perilous position he was in. The cause and manner of the accident were patent and obvious, and the defendant was not misled by any inaccurate or confusing statement of facts which may have been in the notice, or by reason of the failure to state the cause with greater amplitude. There could have been no intention to deceive. In fact, there is no dispute over the manner in which the plaintiff received his injuries. In view of the beneficial purpose of this law and with the saving clause adverted to, the notice should be construed to some extent in the light of the existing facts in each case. If the accident occurred in an obscure part of the building, or if no one observed it, or if there were any other facts requiring a definite, explicit detailed statement of the cause of the accident in order to enlighten the employer, the notice should state pointedly the facts constituting the real cause of the injuries. If, however, the cause of the accident is obvious and the employer knows precisely how, and when, and where it occurred, a notice of less particularity and precision may be deemed to be adequate. Heffron v. Lackawanna Steel Co., 121 App. Div. 35, 105 N. Y. Supp. 429, affirmed 194 N. Y. 598, 88 N. E. 1121. As already noted, Youse, the foreman and superintendent, as the jury have found, actually in charge of the carpenters employed on the work by the appellant assured the plaintiff and the other carpenters that the crane would not run while they were at work. The plaintiff relied upon this explicit assurance of his superintendent, and he was justified in so doing. Lobasco v. Moxie Nerve Co., 127 App. Div. 677, 111 N. Y. Supp. 1007; Siedentop v. Buse, 21 App. Div. 592, 47 N. Y. Supp. 809. Assuming

that Youse, as he testified, told Rose, the operator of the crane, to look out for the men at work, the defendant is not thereby exonerated from liability. The plaintiff relied upon Youse to keep the crane from running, and the promise of the latter to do so indicated he had control over it. One of the essentials in making the place where the plaintiff was at work reasonably safe was to prevent the crane from operating on the track. Youse represented the master in assuming to do this. Whether he performed his full measure of duty to the plaintiff in carrying out the promise he made was for the jury to determine.

Again, it is urged that because the plaintiff told Rose to remember that he and Roberts were at work on the girder denotes that he placed no reliance upon the assurance of Youse. The plaintiff in warning Rose was exercising the caution of a careful man going to work in a place of danger. He might still have relied upon the promise of Youse. In any event, the jury have so found, and the evidence sustains the finding. The plaintiff assumed the risk, dangerous as it was, of falling from the girder or of the perils incident to the performance of the work in the condition the girder and surroundings were while he was putting in the windows. He did not assume the risk of being injured by the moving crane, for he was assured by the alter ego of the defendant that he would not be subjected to that additional jeopardy.

The defendant urges that the court erred in receiving evidence of injury to the plaintiff's nerves, on the ground that no such injuries were alleged, and that they were not the natural or necessary result of the injuries claimed. The allegations of the complaint in setting forth the injuries are quite general, as follows:

"His person and body squeezed, crushed, bruised, and lacerated, and his limbs and body torn, injured, disfigured, and crippled, causing the plaintiff great pain and suffering, and disabling him so that he was during all the time thereafter, and still is, unable to pursue his usual business and avocation, as a carpenter and joinder."

And, further, that the injuries sustained are permanent.

Among the many injuries which the plaintiff sustained in the collision was a puncture about two inches deep on the left side of the rectum at the lower end of the spinal column, which was also broken off. This puncture or wound injured the sphincter muscle which controls the rectum. One of the physicians testified that there was much scarred tissue on the left side of the rectum, and that "the sphincter muscle could not functionate in that condition," and the muscles became atrophied by reason of this injury to the nerves. It is reasonable to conclude, therefore, that the injuries to the plaintiff's nerves were the immediate, natural, and necessary result of this puncture, and of the bruises and laceration of the body of the plaintiff. Within the general averments of the complaint, it was competent to show injuries to the nerves which were the natural and reasonable result of the injuries sustained by the plaintiff. Rudomin v. Interurban St. R. R. Co., 111 App. Div. 548, 98 N. Y. Supp. 506; Eichholz v. N. F. H. P. & M. Co., 68 App. Div. 441, 73 N. Y. Supp. 842, affirmed 174 N. Y. 519, 66 N. E. 1107; Roenbeck v. Brooklyn Hts. R. R. Co., 123 App. Div. 606, 108 N. Y. Supp. 80; Ehrgott v. Mayor, etc., 96 N. Y. 264,

48 Am. Rep. 622; Myers v. Erie R. R. Co., 44 App. Div. 11, 15, 60 N. Y. Supp. 422.

The verdict was not excessive. The plaintiff's left foot was crushed, the left leg fractured in two places, the knee injured, the left hip crushed and bruised, the ribs crushed in, and the sphincter muscles lacerated, and these are among the serious injuries which the plaintiff sustained. The trial was 20 months after the accident, and the plaintiff, who was then of the age of 39 years, was obliged to use a crutch, and the physicians testified that his injuries would be permanent, and that he would not again be able to work at his trade.

The other questions urged do not call for a reversal of the judgment.

The judgment should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur.